————————————

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

————————————

REPWIRE LLC, JIN TIONG ELECTRICAL MATERIALS
MANUFACTURER PTE. LTD.,
Plaintiff-Appellants

v.

UNITED STATES, SOUTHWIRE COMPANY, LLC,
ENCORE WIRE CORPORATION
Defendant-Appellees.

————————————

2023-1933

————————————

Appeal from the United States Court of International Trade in No. 22-cv-00016, Judge Jennifer Choe-Groves

————————————

Brief of Plaintiff-Appellants

REPWIRE LLC, JIN TIONG
ELECTRICAL MATERIALS
MANUFACTURER PTE. LTD.

DAVID J. CRAVEN
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel to Plaintiff-Appellants

August 3, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1933 |
| **Short Case Caption** | Repwire LLC v. United States |
| **Filing Party/Entity** | Repwire LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/02/2023

Signature:  /s/ David J. Craven

Name:  David J. Craven

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Repwire LLC | | |
| Jin Tiong Electrical Materials Manufacturer PTE, Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable            ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

## TABLE OF CONTENTS

Certificate of Interest................................................................................i

Table of Contents ...................................................................................iv

Table of Authorities...............................................................................v

Statement of Related Cases ...................................................................1

Statement of Jurisdiction.......................................................................2

Statement of the Issues..........................................................................4

Statement of the Case............................................................................5

Statement of Facts .................................................................................6

Summary of Argument...........................................................................8

Standard of Review ...............................................................................9

Argument...............................................................................................12

    A)    The Department of Commerce had no Discretion and the
        Determination is not Supported by the Record........................ 12

    B)    A Separate Rate Can be Determined in Three Different Ways ............... 14

Conclusion and Claim for Relief...........................................................20

Statutory Addendum

Judgment Order......................................................................................a

Slip Op. .................................................................................................b

Proof of Service .....................................................................................c

Certificate of Compliance .....................................................................d

TABLE OF AUTHORITIES

**Court Cases**:

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (1984) ....................................9

*American Lamb Co. v. United States*, 785 F.2d 994 (Fed. Cir. 1986)..........................................................................................10

*Carpenter Technology, et al. v. United States*, 662 F.Supp.2d 1337 (2009) ....................................................................10,13,

*Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)..................................................................9, 10

*Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363 (2011 Fed. Cir)................................................................................18, 19

*Jinan Yipin Corp. v. United States*, 637 F.Supp.2d 1183 (2009) ............................10

*Koyo Seiko Co., Ltd v. U.S.*, 36 F.3d 1565 (Fed. Cir. 1994) ....................................16

*Micron Tech., Inc. v. United States*, 117 F.3d 1386 (Fed. Cir. 1997)..........................................................................................9

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365 (Fed.Cir.2001)................................................18,19

*NSK Ltd. v. U.S.,* 115 F.3d 965 (Fed. Cir. 1997) ....................................16

*Pesqueara Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001)...................................................10

*Schaeffler Italia S.r.l. v. United States*, 781 F.Supp.2d 1358 (Ct. Int'l Trade 2011)......................................................................13,14

*SKF USA, INC. v. U.S.*, 263 F. 3d 1369 (Fed. Cir. 2001) ........................................18

*Taian Ziyang Food v. United States*, 637 F.Supp.2d 1093 (2009)...........................10

*Timex V.I. Inc. v. United States*, 157 F.3d 879 (Fed. Cir. 1988) ..............................10

*Zenith Radio Corp. v. United States*, 437 U.S. 443  (1978) ...................................... 10

*Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 637 F.Supp.2d 1260 (Ct. Int'l Trade 2009) ........................ 12,13

**Laws:**

19 U.S.C. §1516a ................................................................................................ 2

19 U.S.C. §1516a(b)(1)(B)(i) (2006) ................................................................ 9,10

19 U.S.C. §1677f-1(c)(1) ................................................................................ 5,12,13

28 U.S.C. §1295(a)(5) .......................................................................................... 2

28 U.S.C. §1581(c) .............................................................................................. 2

28 U.S.C. §§ 2107(b) and 2654(c) ...................................................................... 2

**Administrative:**

*Aluminum Wire and Cable from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 70496 (December 23, 2019) ............................................................... 5,6

*Cast Iron Soil Pipe from the People's Republic of China: Initiation of Less Than-Fair Value Investigation*, 83 Fed. Reg. 8053 (February 23, 2018) ...................................................................... 16

**Other:**

Federal Circuit Rule 47.5 ..................................................................................... 1

Rule 4 of the Federal Rules of Appellate Procedure .......................................... 2

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5 Plaintiff-Appellants Repwire LLC and

Jin Tiong Electrical Materials Manufacturer Pte. Ltd. ("Repwire"), state:

1.  There have been no other appeals from this civil action or
    proceeding in the lower court to the U.S. Court of Appeals
    for the Federal Circuit or any other Appellate Court.

2.  Plaintiff-Appellants are not aware of any other matter
    presently pending at the U.S. Court of International Trade
    which could be directly affected by the decision in this
    pending appeal.

### STATEMENT OF JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1295(a)(5) which confers on the U.S. Court of Appeals for the Federal Circuit exclusive jurisdiction of appeals from final decisions of the U.S. Court of International Trade.

2.    This matter is an appeal of a final determination and order by the United States Court of International Trade ("CIT"). Jurisdiction was proper before the U.S. Court of International Trade pursuant to 28 U.S.C. §1581(c). This provision of law confirms on the CIT exclusive jurisdiction over any civil action commenced under section 516A of the Tariff Act of 1930, as amended. (19 U.S.C. §1516a).

3.    This appeal is timely. Rule 4 of the Federal Rules of Appellate Procedure and 28 U.S.C. §§ 2107(b) and 2654(c) permit any party to file a Notice of Appeal within 60 days after entry of a judgment in a civil case to which the United States is a party. The United States was a party to the case before the CIT. The CIT's final Judgment was issued on March 20, 2023[1] (APPX15 to APPX28) Plaintiff-Appellants Repwire LLC and Jin Tiong Electrical Materials Manufacturer Pte. Ltd filed a notice of appeal during the 60-day

---

[1] Pursuant to the Court's rules, citations to record documents included in the Joint

2

period after entry of judgment. This appeal was timely filed within the 60-day period after entry of judgment.

---

Appendix are cited herein as "APPX__".

*STATEMENT OF THE ISSUES*

1.      Whether the U.S. Department of Commerce abused its discretion when it did not conduct a full administrative review of plaintiff-appellant Jin Tiong Electrical Materials Manufacturer Pte. Ltd.

2.      Whether the U.S. Department of Commerce had authority to limit respondents when the total pool of potential respondents was not large.

3.      Whether the U.S. Department of Commerce committed error by withdrawing the questionnaire issued to Jin Tiong Electrical Materials Manufacturer Pte. Ltd  thereby not permitting Jin Tiong Electrical Materials Manufacturer Pte. Ltd to respond.

4.      Whether the U.S. Court of International Trade committed error by ratifying the action of the administering authority.

## STATEMENT OF THE CASE

There is an antidumping order on Aluminum Wire and Cable which was published as *Aluminum Wire and Cable from the People's Republic of China: Antidumping and Countervailing Duty Orders,* 84 Fed. Reg. 70496 (December 23, 2019).    This appeal concerns the 1st Administrative review, *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8166 (Feb. 4. 2021). (APPX92 to APPX102)

The general rule is that "the administering authority shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise." 19 U.S.C. §1677f-1(c)(1). The only exception to this general rule is for reviews of large numbers of exporters or producers. Notwithstanding the clear dictates of the statute, the Department did not determine an individual weighted average for each known exporter, but rather failed to issue questionnaires to any potential mandatory respondent.

Contrary to the foregoing, the Court of International Trade found that the failure to provide a Separate Rate Application permitted the Department to find that Jin Tiong was part of the China-Wide entity.

Appellants Jin Tiong and Repwire disagree and this appeal followed.

5

### STATEMENT OF FACTS

a.      On December 31, 2020, Repwire LLC requested that the Department conduct an Administrative Review of its supplier Jin Tiong Electrical Materials Manufacturer Pte. Ltd. (APPX35 to APPX37).   Its supplier Jin Tiong Electrical Materials Manufacturer Pte. Ltd had not received an individual rate in the original investigation. *Aluminum Wire and Cable from the People's Republic of China: Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70496 (Dec. 23, 2019).

b.      On February 4, 2021 the Department initiated the administrative review with respect to only two entities -- Jin Tiong and ICF Cable.  (APPX92 to APPX102)

c.      On July 15, 2021 the Department issued an Antidumping Duty questionnaire to Jin Tiong.  (APPX104)

d.      On July 28, 2021 the Department withdrew the questionnaire. (APPX108 to APPX109)

e.      On July 30, 2021, Jin Tiong objected to the withdrawal of the questionnaire (APPX115 to APPX180) and tendered a response to Section A of the Department's questionnaire. (APPX181) As part of this objection, Jin Tiong placed on the record certain additional facts about actions of the Department in other administrative reviews.

6

f.      On August 16, 2021  the Department rejected the Section A response filed by Jin Tiong.  (APPX188 to APPX189)

g.      On October 4, 2021 and October 12, 2021 the parties submitted case and rebuttal briefs. (APPX212 to APPX279, APPX282 to APPX291, and APPX292 to APPX310)

h.      On December 20, 2021 the Department issued final results (APPX321 to APPX326) and an Issues and Decisions Memorandum (APPX327 to APPX333). Such results were published in the Federal Register on December 27, 2021 (APPX334 to APPX335).

### *Summary of Argument*

- The total number of potential respondents was two.    Two is not a large number.    The statute and regulations only permit the Department to limit respondents when the number of respondents is large.    As such, the Department was not allowed to limit respondents.

- Separate Rate Status can be requested in three different ways.  One of these ways assumes that no SRA had been filed and the Separate Rate Status is addressed in the questionnaire.    The Department's refusal to issue a questionnaire in the absence of an SRA renders this provision a nullity.

- The Department has issued a questionnaire to a respondent that did not submit an SRA over the objections of third parties.  The treatment of Jin Tiong is disparate.

### STANDARD OF REVIEW

In reviewing judgments of the U.S. Court of International Trade, this Court "appl{ies} anew" the same statutory judicial review standard applied by the lower court. See *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 n. 10 (1984); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1392-93 (Fed. Cir. 1997). The standard of review, as set forth at 19 U.S.C. §1516a(b)(1)(B)(i) (2006), requires that:

> {t}he Court shall hold unlawful any determination, finding or conclusion found … to be unsupported by substantial evidence of record or otherwise not in accordance with law.
> 19 U.S.C. §1516a(b)(1)(B)(i) (2006)

In reviewing a question of law, this Court's deliberations are guided by the principles set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Under *Chevron*, a court reviewing an agency's interpretation of a statute must begin with the statutory test: "{i}f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842 (citations omitted). This court has further emphasized that a court must "carefully investigate the matter to determine whether Congress's purpose and intent on the question at issue {are} judicially ascertainable." *Timex V.I. Inc. v. United States*, 157 F.3d 879, 881 (Fed. Cir. 1988) (citing *Chevron*, 467 U.S. at 842-43 & n. 9).

9

If this Court finds that the statute is silent or ambiguous with respect to the specific question at issue, the question for the Court is whether Commerce's interpretation is based on a permissible interpretation of the statute. *Chevron*, 467 U.S. at 842. The agency's reasonable interpretations of its statutory responsibilities are entitled to judicial deference. *Id.* at 844; *Pesqueara Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1379-80 (Fed. Cir. 2001). A reviewing court must accord substantial weight to the agency's interpretation of the statute is administers. See *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450-51 (1978); *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed. Cir. 1986).

Decisions of the Commerce Department must be based on "adequate reasoning." Simplistic or vague reasoning is inadequate. *Taian Ziyang Food v. United States*, 637 F.Supp.2d 1093 (2009) at 1126, 1140 and 1151; *Jinan Yipin Corp. v. United States*, 637 F.Supp.2d 1183 (2009) at 1189, 1192, 1196, 1197; *Carpenter Technology, et al. v. United States*, 662 F.Supp.2d 1337 (2009) at 1344 Application of legal and evidentiary standards of review to the agency's determination in this case demonstrate that Commerce's determination not to conduct a review of Jin Tiong was not in accordance with law and was not supported by substantial evidence and not based on adequate reasoning. The lower court's sustaining of the Commerce's decision under these standards was

10

erroneous. This Court should remand this case to the lower court with instructions that it remand the matter to the administrative agency.

*ARGUMENT*

### A)    The Department of Commerce had No Discretion and the Determination is Not Supported by the Record

The general rule is that "the administering authority shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise."  19 U.S.C. §1677f-1(c)(1).  The only statutory exception is for reviews of **large** numbers of exporters or producers.  The statute states:

> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the **large number** of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—
> 19 U.S.C. §1677f-1(c)(2)(Emphasis Added)

The Courts have considered the meaning of the term "large" in this statute. While no definite number as to what constitutes a large number has been set, the consensus is that two is not a large number.  The relevant case law has examined this issue in detail.

In *Zhejiang Native Produce & Animal By-Products Import & Export Corp. v. United States*, 637 F.Supp.2d 1260 (Ct. Int'l Trade 2009) the Court considered whether the Department should have been required to examine the plaintiff as a

12

mandatory respondent.    The Department had refused to do so as the Department

had decided to limit respondents.  The Court stated:

> The court rejects Commerce's conclusion. The statute focuses solely
> on the practicability of determining individual dumping margins based
> on the large number of exporters or producers involved in the review
> at hand. See 19 U.S.C. § 1677f-1(c)(2).Accordingly, Commerce may
> not rely upon its workload caused by other antidumping proceedings
> in assessing whether the number of exporters or producers is "large,"
> and thus deciding that individual determinations are impracticable.
> Commerce cannot rewrite the statute based on its staffing issues.
> * * *
> By contrast, the number of exporters and producers initially involved
> in this review, **four, does not appear to satisfy the requirement that
> the number be "large" under any ordinary understanding of that
> word**. . .
> *Zhejiang Native* at 1264.

In *Schaeffler Italia S.r.l. v. United States*,   781 F.Supp.2d 1358 (Ct. Int'l

Trade 2011) the Court stated:

> In using the terms "reasonable number of exporters or producers" and
> "large number of exporters or producers" in section 777A(c)(2) of the
> Tariff Act, Congress has directly spoken to the precise question at
> issue. The plural term "reasonable number of exporters or producers,"
> read according to its plain meaning, **does not encompass a quantity
> of one.** 19 U.S.C. § 1677f-1(c)(2) (emphasis added). Nor may the
> term "large number of exporters or producers," id. (emphasis added),
> **plausibly be construed to mean any number of exporters or
> producers greater than two**. See *Zhejiang Native Produce & Animal
> By-Products Import & Export Corp. v. United States*, 33 CIT ___,
> ___, 637 F.Supp.2d 1260, 1264-65 (2009); *Carpenter Tech. Corp. v.
> United States*, 33 CIT ___, ___, 662 F.Supp.2d 1337, 1342-46 (2009).
> Not only does the Department's implied construction violate plain
> meaning, it so elevates the "[e]xception" of paragraph (2) of section
> 777A(c) of the Tariff Act as to render meaningless the "[g]eneral rule"
> of paragraph (1) of the provision.

13

*Schaeffler Italia S.r.l. at 1362-1363*

Accordingly, as at the time of initiation of the review, there were only two exporter/producers, and as two is not a large number, it was clear that the Department would not be able to limit the number of respondents and must conduct an individual review of the two potential respondents.

### B) A Separate Rate Can be Determined in Three Different Ways

The purpose of a Separate Rate analysis is to determine whether a respondent is free of government control. The Separate Rate Application is not, however, the only way to obtain a separate rate. The Department provides three alternatives for establishing the eligibility to obtain a separate rate. These are set forth in Section A of Department NME questionnaires[2]. These questionnaires state:

2. Separate Rates

This section requests economic, industry, and company-specific information. All companies requesting a separate rate must respond to the following questions. The questions presented in this section are identical to the questions contained in the Separate-Rate Application. **Because your company was selected as a mandatory respondent in this investigation, you have several options with regard to the manner in which to support your request for a separate rate:**

i.    If you have already submitted a Separate Rate

---

[2] While the Department rejected the questionnaire transmitted to Jin Tiong, Jin Tion placed on record a portion of a Department questionnaire in another NME matter which set forth these three methods.

> Application you may rely on that as the basis to support your request for a separate rate by stating this intention in your Section A questionnaire;
>
> ii.    You may respond to the Separate Rate Section of this questionnaire and agree to withdraw your earlier Separate Rate Section from the record of this proceeding (if you select this option, please include the letter attached in Appendix X of this questionnaire, regarding the withdrawal of information, to your questionnaire response); or
>
> iii.    If you have not already submitted a Separate Rate Application, you must respond to the Separate Rate Section in the Section A questionnaire.
>
> Section A Response of Yuncheng Jiangxian Economic at 3 (APPX151)

The language is quite clear. It ties the selection of a respondent as a mandatory respondent to several options for obtaining such status. Establishing a requirement that a party submit an SRA in order to have a questionnaire issued to it, essentially renders both the specific language which states "Because your company was selected as a mandatory respondent in this investigation, you have several options with regard to the manner in which to support your request for a separate rate" as well as the third criteria a nullity. Words and sentences must be given meaning. An interpretation that renders the express language of a provision a nullity is necessarily an overbroad interpretation.

The proposition that an SRA is not necessary is further confirmed by the express language of the questionnaire. The questionnaire stated:

> Note: The Department presumes that a single weighted-average dumping margin is appropriate for all exporters in a non-

15

> market economy country. The Department may, however, consider requests for separate rates from individual exporters. **Individual exporters requesting a separate rate must respond to the following questions in order for the Department to consider fully the issue of separate rates.**   (Emphasis Added) (APPX150)

This language does not refer to an SRA or an SRC, but rather unequivocally directed individual exporters to respond to "the following questions in order for the Department to consider fully the issue of separate rates".

There is a long line of cases which hold that individual words must be given their "plain" meaning in the Antidumping Duty context. See *Koyo Seiko Co., Ltd v. U.S.*, 36 F.3d 1565 (Fed. Cir. 1994) at 1574,  *NSK Ltd. v. U.S.*, 115 F.3d 965 (Fed. Cir. 1997)  If entire paragraphs are ignored, the individual words are not only not being given their ordinary meaning, they are being given no meaning.

In other words, the express language of the questionnaire and the third option contemplates a situation where the Department has selected a mandatory respondent who has not submitted a Separate Rate Application by the deadline. This is not mere speculation.  In the antidumping duty investigation of *Cast Iron Soil Pipe* (A-570-079), the legal entity Yucheng Jiangxian Economic Development Zone HengTong Casting Co., Ltd ("Hengtong Casting") did not submit a separate rate application. The notice of initiation was published as *Cast Iron Soil Pipe From the People's Republic of China: Initiation of Less than-Fair Value Investigation*,

16

83 Fed. Reg. 8053 (February 23, 2018)  and the Separate Rate Applications were due on March 29, 2018.    Multiple parties filed separate rate applications. Hengtong Casting did not do so.  On April 9, 2018 multiple respondents objected to the potential selection of Hengtong Casting and asked the Department to select mandatory respondents from the pool of companies that had submitted Separate Rate Applications. (Comments on Selection of Respondents and Withdrawal of Questionnaire "Comments"(APPX131 to APPX133)).  This is evidenced by the Access Docket sheets which do not contain any reference to an SRA filed by Hengtong. (Comments, (APPX121 to APPX129)). On April 23, 2018 the Department selected mandatory respondents and selected Hengtong Castings as a mandatory respondent notwithstanding its failure to participate in the SRA process and issued a questionnaire providing them the ability to obtain a Separate Rate by filing a response to Section A. (Comments, (APPX142 to APPX177)). It is critical to note that in making this respondent selection decision, CBP only considered the quantity and value of the imports and did not consider whether or not the companies did not file Separate Rate Applications. (Comments, (APPX135 to APPX140)

On May 24, 2018 Hengtong Casting, which had not submitted an SRA, notwithstanding that these SRA had been due on March 29, 2018 submitted its Section A response.  (Comments, (APPX142 to APPX177)).

17

In contrast, in this case there were only two potential respondents, the Department did not need to limit the number of respondents, and in fact, the Department did not issue a respondent selection memorandum, but rather simply transmitted the questionnaire to Jin Tiong. (APPX104). The Department properly issued the questionnaire and Jin Tiong should have been allowed to establish its eligibility for a Separate Rate by completing Section A of the questionnaire.

This is important as the Department cannot treat similarly situated entities in a disparate manner. A disparate result, even where one is in an investigation and another is in a review, is not appropriate. In *SKF USA, INC. v. US*, 263 F. 3d 1369 (Fed. Cir. 2001), the Court held:

> As the District of Columbia Circuit has noted, it is well-established that "an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." *Transactive Corp. v. United States,* 91 F.3d 232, 237 (D.C.Cir.1996). In a recent decision, we specifically held that the Department of Veterans Affairs was required to explain why two of its regulations had interpreted virtually identical language contained in related veterans' benefits statutes in conflicting ways. *Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1368 (Fed.Cir.2001)
> SKF US at 1382

The decision in *Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363 (2011 Fed. Cir) is directly on point. The Court stated:

> We have indicated that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently. *See, e.g., Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1379-80 (Fed.Cir.

18

2001) (remanding an agency determination to allow the agency to provide a reasonable explanation for its decision to interpret virtually identical statutory language in related statutes inconsistently). Our prior decision in *SKF I* is particularly on point. In *SKF I,* this court held that Commerce's interpretation of the term "foreign like product" in two different ways within the same antidumping proceeding without explanation conflicted with rules of statutory construction. 263 F.3d at 1382. We concluded, "Commerce is required to explain why it uses two different definitions [of the same term], and that explanation must be reasonable." *Id.* This case is even more straightforward than *SKF I* and *National Organization of Veterans' Advocates* because here Commerce is construing *the exact same statutory provision* and concluding that it can be interpreted to have different meanings depending on the type of antidumping proceeding when it has previously argued the opposite. Although 19 U.S.C. § 1677(35) is ambiguous with respect to zeroing and Commerce plays an important role in resolving this gap in the statute, Commerce's discretion is not absolute. Commerce must provide an explanation for why the statutory language supports its inconsistent interpretation. *Dongbu Steel* at 1372.

The Department's "reason" for the difference, that the Department thought that the entity had submitted an SRA and reported as such in the preliminary results, is not credible.   The Department should be presumed to read all submissions on the record, and the objection was clear and timely.  The Court can correctly conclude that the DOC's determination at the time of the issuance of the questionnaire was based on the correct facts, and that the preliminary determination issued long after issuance of the questionnaire contained an *ex post facto* justification.

In sum, separate rate status can be acquired in a number of different ways.

One of these ways assumes that non-filing of an SRA.  Applying the Department's "test", that the SRA must be filed prior to the issuance of the questionnaire, renders the third statutory test a nullity.  The Department's error was compounded by the Department's decision to ignore precedent where, over objections, the Department issued a questionnaire to an entity that had not submitted an SRA.

### CONCLUSION AND CLAIM FOR RELIEF

Plaintiff-Appellants submit that this is a simple case with a limited number of issues and a limited number of facts.   It is uncontestable that the number of potential respondents was not large and that the Department could not limit respondents.   It is uncontestable that the Department provides three different paths to separate rate status.    The third of these paths presupposes the filing of a response to Section A of the questionnaire in the absence of an SRA.

The Department was compelled to issue a questionnaire to Jin Tiong, should not have rescinded such questionnaire, and should have permitted Jin Tiong to file a full response to the questionnaire.  The Court should rectify this problem by remanding this matter to the U.S. Court of International Trade with direction that the U.S. Court of International  Trade remand this matter to the Department of Commerce with directions that it solicit a full questionnaire from Jin Tiong, and to calculate a rate based on this full questionnaire.

For  the  foregoing  reasons,  Plaintiff-Appellants  requests  that  this  Court

20

overturn the decision of the Court of International Trade and direct the lower Court

to remand this matter to the Department of Commerce with instructions to conduct

a full review of Plaintiff-Appellant Jin Tiong.

Respectfully submitted,

/s/David J. Craven
DAVID J. CRAVEN
CRAVEN TRADE LAW LLC
3744 N Ashland
Chicago, IL 60613

(773) 709-8506

Counsel to Plaintiff-Appellants

August 3, 2023

Addendum

Pursuant to Fed. Cir. Rule 28 (11)

Index to Addendum

| Description | Appendix Citation |
|---|---|
| *Judgment Order in Repwire LLC, et al v. United States,* *CIT Court No. 22-00016 (March 20, 2023)* | APPX29 to APPX30 |
| *Repwire LLC, et al v. United States,* *Slip Op 23-40 (March 20, 2023)* | APPX15 to APPX28 |

Judgment Order in *Repwire LLC, et al v. United States*,
CIT Court No. 22-00016 (March 20, 2023)

## UNITED STATES COURT OF INTERNATIONAL TRADE

REPWIRE LLC,

     Plaintiff,

and

JIN TIONG ELECTRICAL
MATERIALS
MANUFACTURER PTE,
LTD,

     Consolidated Plaintiff,

v.

UNITED STATES,

     Defendant,

SOUTHWIRE COMPANY
LLC, and ENCORE WIRE
CORPORATION,

     Defendant-Intervenors.

Before: Jennifer Choe-Groves, Judge

Consol. Court No. 22-00016

## **JUDGMENT**

    This case having been duly submitted for decision, and the Court, after due

deliberation, having rendered a decision; now therefore, in conformity with said

decision, it is hereby

 

 

**ORDERED** that the U.S. Department of Commerce's final results in

<u>Aluminum Wire and Cable from the People's Republic of China</u>, 86 Fed. Reg.

73,251 (Dep't of Commerce Dec. 27, 2021) (final results of antidumping duty

administrative review; 2019–2020), are sustained and judgment is entered for

Defendant.

 

 

    /s/ Jennifer Choe-Groves    
Jennifer Choe-Groves, Judge

Dated:     March 20, 2023   
       New York, New York

*Repwire LLC, et al v. United States*,
Slip Op 23-40 (March 20, 2023)

b

Slip Op. 23-40

## UNITED STATES COURT OF INTERNATIONAL TRADE

REPWIRE LLC,

     Plaintiff,

and

JIN TIONG ELECTRICAL
MATERIALS
MANUFACTURER PTE,
LTD,

     Consolidated Plaintiff,

v.

UNITED STATES,

     Defendant,

SOUTHWIRE COMPANY
LLC, and ENCORE WIRE
CORPORATION,

     Defendant-Intervenors.

Before: Jennifer Choe-Groves, Judge

Consol. Court No. 22-00016

## OPINION AND ORDER

[Sustaining the final results of the administrative review by the U.S. Department of Commerce in the antidumping duty investigation of aluminum wire and cable from the People's Republic of China.]

Dated: March 20, 2023

David J. Craven, Craven Trade Law LLC, of Chicago, IL, for Plaintiff Repwire
LLC and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturer PTE,
Ltd.

Reginald T. Blades, Jr., Assistant Director, and Eric J. Singley, Trial Attorney,
Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of
Washington, D.C., for Defendant United States.  With them on the brief were
Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M.
McCarthy, Director.  Of Counsel was Spencer Neff, Attorney, Office of the Chief
Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Sydney H. Mintzer, Mayer Brown LLP, of Washington, D.C., for Defendant-
Intervenor Southwire Company, LLC.

Jack A. Levy, James E. Ransdell, IV, and Myles S. Getlan, Cassidy Levy Kent
(USA) LLP, of Washington, D.C., for Defendant-Intervenor Encore Wire
Corporation.

 Choe-Groves, Judge: This action concerns the import of aluminum wire and
cable from the People's Republic of China ("China"), subject to the administrative
determination by the U.S. Department of Commerce ("Commerce") in Aluminum
Wire and Cable from the People's Republic of China ("Final Results"), 86 Fed.
Reg. 73,251 (Dep't of Commerce Dec. 27, 2021) (final results of antidumping duty
admin. review; 2019–2020); see also Issues and Decision Mem. for the Final
Results of Antidumping Duty Administrative Review of Aluminum Wire and
Cable from the People's Republic of China ("Final IDM"), ECF No. 24-5.

 Before the Court is the Motion for Judgment on the Agency Record Pursuant
to Rule 56.2 of the Rules of the U.S. Court of International Trade and
Memorandum of Law in Support of the Rule 56.2 Motion of Plaintiff Repwire

LLC and Consolidated Plaintiff Jin Tiong Electrical Materials Manufacturere [sic]

PTE LTD for Judgment Upon the Agency Record, filed by Plaintiff Repwire LLC

("Repwire") and Consolidated Plaintiff Jin Tiong Electrical Materials

Manufacturer PTE, Ltd. ("Jin Tiong"), challenging Commerce's <u>Final Results</u>.

Pl.'s R. 56.2 Mot. J. Agency R. and Mem. Supp. ("Pl.'s Br."), ECF No. 34.

Defendant United States ("Defendant") filed Defendant's Response to Plaintiff's

and Consolidated Plaintiffs' [sic] Motion for Judgment Upon the Agency Record.

Def.'s Resp. Br. Opp'n Pl.'s R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF

No. 37.  Defendant-Intervenor Southwire Company, LLC filed Defendant-

Intervenor Southwire Company, LLC's Opposition to Plaintiffs' Rule 56.2 Motion

for Judgment on the Agency Record.  Def.-Interv.'s Resp. Br. Opp'n Pl.'s R. 56.2

Mot. J. Agency R., ECF No. 38.  Repwire and Jin Tiong filed their Reply of

Plaintiff and Consolidated Plaintiff to Responses of Defendant and Defendant

Intervenor.  Pl.'s Reply Br. Supp. R. 56.2 Mot. J. Agency R. ("Pl.'s Reply Br."),

ECF No. 42.

The Court reviews Commerce's determination to reject Jin Tiong's

questionnaire response and apply the China-wide entity antidumping duty rate to

Jin Tiong.  For the reasons discussed below, the Court sustains Commerce's

determination.

## BACKGROUND

Commerce initiated an administrative review of the antidumping order

Aluminum Wire and Cable from the People's Republic of China on February 4,

2021.  Initiation of Antidumping and Countervailing Duty Administrative Reviews

("Initiation Notice"), 86 Fed. Reg. 8166 (Dep't of Commerce Feb. 4, 2021).

Commerce initiated a review of two companies, ICF Cable and Jin Tiong, for the

period of June 5, 2019 to November 30, 2020.  Id. at 8167.  Commerce instructed

in the Initiation Notice that all firms subject to the review, including ICF Cable and

Jin Tiong, that wished to seek a separate rate must complete and submit a separate

rate application or certification no later than thirty (30) days from the publication

of Commerce's Initiation Notice.  Id.  Relevant to this case, Jin Tiong did not

submit a separate rate application or certification by the 30-day deadline.  Memo

From USDOC to File Pertaining to Jin Tiong Electrical Materials Manufacturer

Recission of Questionnaire (July 28, 2021) ("Jin Tiong Questionnaire Recission

Memo") at 1–2, PR 21.

Subsequently, Commerce issued a questionnaire to Jin Tiong on July 15,

2021.  Id. at 1.  On July 28, 2021, Commerce rescinded Jin Tiong's questionnaire,

explaining that Commerce had issued the questionnaire in error.  Id. at 1–2.

On July 30, 2021, Jin Tiong objected to Commerce's withdrawal of the

questionnaire, and on August 5, 2021, Jin Tiong submitted a Section A

questionnaire response.  Rejection Memo From USDOC to File Pertaining to Jin

Tiong Rejection of Jin Tiong's Unsolicited Sec A Response (Aug. 16, 2021) ("Jin

Tiong Questionnaire Rejection Memo") at 1, PR 29 (citing Jin Tiong's Letter,

"Aluminum Wire and Cable from the People's Republic of China, A-570-095;

Objection to Withdrawal of Questionnaire," dated July 30, 2021).  On August 16,

2021, Commerce rejected Jin Tiong's submission, stating that the questionnaire

response was unsolicited.  See generally id.

        Commerce determined that Jin Tiong was not eligible for examination in the

administrative review because Jin Tiong failed to submit a timely separate rate

application.  Aluminum Wire and Cable from the People's Republic of China

("Preliminary Results"), 86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021)

(preliminary results of antidumping duty administrative review; 2019–2020).

Commerce confirmed its determination in the Final Results that Jin Tiong was not

eligible for examination.  See Final Results. 86 Fed. Reg. at 73,251.

## JURISDICTION AND STANDARD OF REVIEW

        The U.S. Court of International Trade has jurisdiction under 19 U.S.C.

§ 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).  The Court shall hold unlawful any

determination found to be unsupported by substantial evidence on the record or

otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

Repwire filed a Complaint challenging: (1) Commerce's determination to withdraw the questionnaire and reject Jin Tiong's questionnaire response; and (2) Commerce's assignment of an antidumping duty rate based on adverse facts available.  Pl.'s Compl. at 5–6, ECF No. 9.

Commerce is authorized by statute to calculate and impose a dumping margin on imported subject merchandise after determining that it is sold in the United States at less than fair value.  19 U.S.C. § 1673.  Commerce determines an estimated weighted average dumping margin for each individually examined exporter and producer and one all-others separate rate for non-examined companies.  19 U.S.C. § 1673d(c)(1)(B).  The U.S. Court of Appeals for the Federal Circuit ("CAFC") has upheld Commerce's reliance on this method for determining the estimated all-others separate rate in § 1673d(c)(5) when "determining the separate rate for exporters and producers from nonmarket economies that demonstrate their independence from the government but that are not individually investigated."  Changzhou Hawd Flooring Co. v. United States, 848 F.3d 1006, 1011 (Fed. Cir. 2017) (citing Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1348 (Fed. Cir. 2016)).

An exporter in a non-market economy must "affirmatively demonstrate" its entitlement to a separate, company-specific margin by showing "an absence of

central government control, both in law and in fact, with respect to exports."

Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997) (quoting

Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 935, 806 F. Supp.

1008, 1013–14 (1992)).  A company that fails to affirmatively demonstrate its

entitlement to a separate rate through the absence of government control is not

eligible for an individual rate and is subject to the "country-wide" rate.  See

Transcom, Inc. v. United States, 294 F.3d 1371 (Fed. Cir. 2002); China Mfrs. All.,

LLC v. United States, 1 F.4th 1028, 1039 (Fed. Cir. 2021) (holding that Commerce

may impose a country-wide rate).

## I.      Commerce's Determination to Withdraw the Questionnaire and Reject Jin Tiong's Questionnaire Response

Repwire argues that Commerce's determination to withdraw the

questionnaire issued to Jin Tiong and reject Jin Tiong's questionnaire response was

unlawful and an abuse of discretion.  Pl.'s Br. at 2.

19 C.F.R. § 351.301(c)(1) provides that Commerce may issue questionnaires

to any person during a proceeding and Commerce will not consider unsolicited or

untimely questionnaire responses.  19 C.F.R. § 351.301(c)(1).  "Commerce has

discretion both to set deadlines and to enforce those deadlines by rejecting

untimely filings."  Grobest & I-Mei Indus. (Vietnam) Co. v. United States, 36 CIT

98, 122, 815 F. Supp. 2d 1342, 1365 (2012) (citing NTN Bearing Corp. v. United

States, 74 F.3d 1204, 1206–07 (Fed. Cir. 1995)).  Agency decisions on acceptance

or rejection of documents submitted for the record are reviewed for abuse of

discretion.  Id.; see also Maverick Tube Corp. v. United States, 39 CIT __, __, 107

F. Supp. 3d 1318, Court No. 21-00173 Page 8 1331 (2015) ("Strict enforcement of

time limits and other requirements is neither arbitrary nor an abuse of discretion

when Commerce provides a reasoned explanation for its decision.").  "An abuse of

discretion occurs where the decision is based on an erroneous interpretation of the

law, on factual findings that are not supported by substantial evidence, or

represents an unreasonable judgment in weighing relevant factors." Consol.

Bearings Co. v. United States, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation

omitted).

In its Initiation Notice, Commerce instructed that all firms listed (including

Jin Tiong, who was identified in the Initiation Notice) that wished to seek a

separate rate must complete and submit a separate rate application within 30 days

of publication of the Initiation Notice in the Federal Register.  Initiation Notice, 86

Fed. Reg. at 8167.  Jin Tiong was on notice of the 30-day deadline as an interested

party because Jin Tiong was identified in the Initiation Notice published in the

Federal Register.  See 44 U.S.C. § 1507 (publication in the Federal Register is

sufficient to give notice of the contents of the document to a person subject to or

affected by it).  Pursuant to the Initiation Notice, Jin Tiong's separate rate

application was due 30 days after publication in the Federal Register, but Jin Tiong

failed to submit a separate rate application by the 30-day deadline.  Jin Tiong does

not dispute that it did not file a separate rate application.  Pl.'s Br. at 10.

On July 15, 2021, Commerce issued a questionnaire to Jin Tiong.  Jin Tiong

Questionnaire Recission Memo at 1.  Commerce rescinded the questionnaire on

July 28, 2021 (approximately two weeks after issuing the questionnaire and before

Jin Tiong responded), explaining that the questionnaire had been issued in error.

Id. at 1–2.  Following recission, Jin Tiong objected on July 30, 2021, and

subsequently filed a Section A response on August 5, 2021.  Jin Tiong

Questionnaire Rejection Memo at 1.  Jin Tiong argues that it should have been

permitted to retain its questionnaire response on the record because Jin Tiong

relied on Commerce's issuance of the erroneous questionnaire.  Defendant explains

Commerce's mistake, stating that:

> By failing to submit a separate rate application, Jin Tiong did not attempt to
> establish its eligibility for a separate rate; therefore, Commerce should not
> have proceeded to "other aspects of a review that are only warranted for a
> company entitled to individual examination," including the issuance of a
> section A questionnaire.

Def.'s Resp. Br. at 6.  In the Final IDM, Commerce stated that it did not receive a

separate rate application from Jin Tiong and was, therefore, without "the

submission of the required information necessary to establish whether [Jin Tiong]

is independent from the control of the government[.]"  Final IDM at 4–5.  For this

reason, Commerce continued to determine that Jin Tiong was not eligible for

individual examination in this administrative review.  Id. at 5.

While Commerce's erroneous issuance and subsequent recission of the

questionnaire was unfortunate, the Court recognizes that Commerce admitted its

mistake within two weeks and withdrew the questionnaire before Jin Tiong filed a

response.  The Court concludes that Commerce's recission of the erroneous

questionnaire was not an abuse of discretion, particularly when Commerce

withdrew the questionnaire prior to Jin Tiong submitting a response.

Repwire also contends that Commerce's determination to reject Jin Tiong's

questionnaire response was unlawful and an abuse of discretion, Pl.'s Br. at 2,

apparently because Jin Tiong submitted the questionnaire response at Commerce's

request (even though Commerce rescinded the questionnaire prior to Jin Tiong's

submission of its response).  Under 19 C.F.R. § 351.301(c)(1), Commerce has

discretion to reject unsolicited filings.  Under 19 C.F.R. § 351.302(d), "the

Secretary will not consider or retain in the official record of the proceedings . . .

unsolicited questionnaire responses[.]"  It is apparent to the Court that Commerce

considered Jin Tiong's submission to be unsolicited because Commerce rescinded

the questionnaire prior to receiving the submission.  The Court holds that because

Commerce's rescission of the erroneous questionnaire was reasonable,

Commerce's subsequent determination that Jin Tiong's submission was unsolicited

was also reasonable, since the questionnaire was rescinded before the response was submitted. The Court concludes, therefore, that Commerce did not abuse its discretion by rejecting Jin Tiong's unsolicited questionnaire response. Consol. Bearings Co., 412 F.3d at 1269.

Because Commerce did not abuse its discretion, the Court sustains Commerce's recission of the questionnaire to Jin Tiong and Commerce's rejection of Jin Tiong's questionnaire response.

## II.    Commerce's Application of the China-wide Entity Rate to Jin Tiong

Repwire argues that in the Final Results, Commerce determined unlawfully that Jin Tiong was not eligible for a separate rate and applied the China-wide entity rate. Pl.'s Br. at 11. Specifically, Repwire argues that Commerce unlawfully rescinded Jin Tiong's questionnaire, then used the absence of a questionnaire response as justification for its determination that Jin Tiong was not entitled to a separate rate. Id. Repwire argues that the "circular reasoning was that since Jin Tiong had not provided such evidence of a separate rate status, it was not entitled to separate rate status, notwithstanding that the [Commerce] Department had rejected, and refused to accept the very information which would have provided evidence of such separate rate status." Id. Repwire complains that "[adverse facts available] applied to Jin Tiong because it did not reply to a questionnaire because the Department withdrew such questionnaire." Id.

Defendant argues, however, that Plaintiffs mischaracterize Commerce's determination and assert that "Commerce did not apply an adverse factual inference to Jin Tiong." Def.'s Resp. Br. at 9. Defendant contends that, "[i]nstead, Commerce simply did not find Jin Tiong to be eligible for individual examination, and it applied a rebuttable presumption that applies to all companies within non-market economy countries." Id. (citing Final IDM at 7). More specifically, Commerce determined that "because Jin Tiong did not timely file [a separate rate application] to attempt to demonstrate its eligibility for a separate rate, the presumption of government control is applicable, and . . . it was not appropriate for Commerce to issue a questionnaire[.]" Final IDM at 7.

The Court observes that Commerce determined in the Preliminary Results that Jin Tiong was subject to the review, that Jin Tiong failed to submit a timely separate rate application, and that, "absent the submission of the required information necessary to establish whether any exporter is independent from the control of the government of the subject [non-market economy], i.e., China, Jin Tong [sic] was not eligible for individual examination in this administrative review." Preliminary Results, 86 Fed. Reg. at 49,307. Commerce determined that the applicable antidumping duty rate was 52.79 percent, the rate established in the final determination of the less-than-fair-value investigation. Id. The Court observes that Commerce confirmed its determination in the Final Results that Jin

Tiong was "not eligible for a separate rate, and, therefore, [is] part of the China-wide entity." Final Results, 86 Fed. Reg. at 73,251.

As discussed earlier, an exporter in a non-market economy must "affirmatively demonstrate" its entitlement to a separate, company-specific margin by showing "an absence of central government control, both in law and in fact, with respect to exports." Sigma Corp., 117 F.3d at 1405. Companies that fail to do so in a non-market economy are not eligible for an individual rate and are subject to the "country-wide" rate. See Transcom, Inc., 294 F.3d at 1382.

Because Jin Tiong failed to file a timely separate rate application or certification within the 30-day deadline of the Initiation Notice that could have potentially demonstrated its independence from Chinese government control in order to be entitled to an individual rate, Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997), the Court concludes that Commerce's determination that Jin Tiong was not eligible for a separate rate was reasonable and supported by substantial evidence. The Court concludes also that Commerce was reasonable in assessing the China-wide entity rate in light of Jin Tiong's failure to demonstrate its independence from government control.

## CONCLUSION

For the foregoing reasons, the Court sustains the <u>Final Results</u>.  Judgment

will issue accordingly.

   /s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:  March 20, 2023
New York, New York

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF SERVICE

**Case Number** 23-1933

**Short Case Caption** Repwire LLC v. United States

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 08/02/2023

by ☐ U.S. Mail  ☐ Hand Delivery  ☐ Email  ☐ Facsimile
   ☑ Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Myles Getlan | Cassidy Levy Kent (USA) LLP<br>900 19th Street NW, Suite 400<br>Washington, DC 20006  Email: mgetlan@cassidylevy.com |
| Sydney Mintzer | Mayer Brown, LLP<br>1999 K Street NW<br>Washington, DC 20006  Email: mgetlan@cassidylevy.com |
| Eric J. Singley | United States Department of Justice<br>Commercial Litigation Branch, Civil Division<br>PO Box 480<br>Ben Franklin Station<br>Washington, DC 2004  Email: eric.j.singley@usdoj.gov |
|  |  |
|  |  |

☐ Additional pages attached.

Date: 08/02/2023

Signature: /s/ David Craven

Name: David Craven

Save for Filing

c

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19<br>July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-1933

**Short Case Caption:** Repwire LLC v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes ___3773___ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 08/02/2023

Signature: /s/ David Craven

Name: David Craven

d