# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————

2023-1933

———————————

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

———————————

REPWIRE LLC, JIN TIONG ELECTRICAL MATERIALS MANUFACTURER PTE. LTD.,

Plaintiff-Appellants

v.

UNITED STATES, SOUTHWIRE COMPANY, LLC, ENCORE WIRE CORPORATION

Defendant-Appellees.

———————————

Appeal from the United States Court of International Trade in No. 22-cv-00016, Judge Jennifer Choe-Groves

———————————

Brief of Defendant-Appellee
SOUTHWIRE COMPANY, LLC

SYDNEY H. MINTZER
MAYER BROWN LLP
1999 K Street, NW
Washington, D.C. 20006
(202) 263-3000
smintzer@mayerbrown.com
*Counsel to Southwire Company, LLC*

October 13, 2023

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 23-1933 |
| **Short Case Caption** | Repwire LLC v. United States |
| **Filing Party/Entity** | Southwire Company, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/05/2023

Signature: /s/ Sydney H. Mintzer

Name: Sydney H. Mintzer

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Southwire Company, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|--|--|--|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION................................................................................1

STATEMENT OF THE CASE..........................................................2

STATEMENT OF FACTS ..................................................................2

SUMMARY OF THE ARGUMENT ..................................................7

I.     STANDARD OF REVIEW ......................................................8

II.    ARGUMENT............................................................................11

    A.   The Court Should Reject Appellants' Argument that Commerce Was Required to Assign Jin Tiong An Individual Rate Because There Were Only Two Respondents.......................................................11

        1.   Appellants Did Not Exhaust Their Administrative Remedies Before Arguing that Commerce Was Required To Assign Jin Tiong An Individual Rate Because Two Respondents Is Not A "Large Number"................................................11

        2.   Appellants' Reliance on *Zhejiang* and *Schaeffler* Is Misplaced Because Those Cases Do Not Address Situations Where the Respondent Failed to Timely Submit an SRA.........................14

    B.   Commerce Did Not Abuse Its Discretion When It Revoked Jin Tiong's Questionnaire after Jin Tiong Failed to File an SRA ............................17

        1.   The Statute Does Not Unambiguously Address The Submission Of An Untimely SRA And Thus The Court Must Determine Whether Commerce Abused Its Discretion ..............................17

        2.   The Language of the SRA and *Initiation Notice* Clearly Set Forth the Requirement for Parties to Qualify for a Separate Rate ................................................18

        3.   Commerce Acted in Line With Its Own Practice When It Revoked Jin Tiong's Questionnaire..........................................23

    C.   Appellants' Arguments That Commerce Committed Error by Revoking Jin Tiong's Questionnaire Are Without Merit.......................................25

        1.   Appellants Incorrectly Argue That Questionnaire Language Is Equivalent To Statutory Language .........................................25

2. Commerce Did Not Act Arbitrarily When It Revoked Jin Tiong's Questionnaire Based on a Failure to Submit a Timely SRA ........................................................................................... 27

**III. CONCLUSION AND RELIEF SOUGHT** ................................................. 30

# TABLE OF AUTHORTIES

## Court Cases

*Amanda Foods (Vietnam) Ltd. v. United States,*
  33 CIT 1407, 647 F.Supp.2d 1368 (2009) .......................................... 20

*Artisan Mfg. Corp. v. United States,*
  38 CIT 682, 978 F.Supp.2d 1334 (2014) .......................................... 22

*Brennan v. Dep't of Health & Human Servs.,*
  787 F.2d 1559 (Fed. Cir.), *cert. denied,* 479 U.S. 985, 107 S.Ct.
  573, 93 L.Ed.2d 577 (1986) .............................................................. 10

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,*
  *467 U.S. 837* (1984) .............................................................. 9, 17, 18

*Consol. Edison Co. v. NLRB,*
  305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938) .............................. 9

*Consolo v. Fed. Mar. Comm'n,*
  383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) ........................ 9

*Corus Staal BV v. United States,*
  502 F.3d 1370 (Fed. Cir. 2007) .................................................... 12, 13

*Decca Hospitality Furnishings, LLC v. United States,*
  29 CIT 920, 391 F.Supp.2d 1298 (2005) .......................................... 20

*Dongbu Steel Co., Ltd. v. US,*
  635 F. 3d 1363 (Fed. Cir. 2011) ...................................................... 27

*Dongtai Peak Honey Indus. Co., Ltd. v. United States.,*
  777 F.3d 1343 (2015) ........................................................................ 20

*Dongtai Peak Honey Indus. Co. v. United States,*
  38 CIT 334, 971 F.Supp.2d 1234 (2014) ............................... 10, 21, 24

*Dupont Teijin Films USA, LP v. United States,*
  407 F.3d 1211 (Fed. Cir. 2005) ........................................................ 8

*Jacobi Carbons AB v. United States*,
619 F. App'x 992 (Fed. Cir. 2015) ..................................................... 12

*Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United States*,
28 F.Supp.3d 1317 (2014) ........................................................ 21, 22

*Koyo Seiko Co., Ltd v. U.S.*,
36 F.3d 1565 (Fed. Cir. 1994) ................................................... 25, 26

*Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*,
260 F.3d 1365 (2001) ...................................................................... 27

*NSK Ltd. v. U.S.*,
115 F.3d 965 (Fed. Cir. 1997) ................................................... 25, 26

*NTN Bearing Corp. v. United States*,
74 F.3d 1204 (Fed. Cir. 1995) ........................................................ 10

*Prime Time Commerce, LLC v. United States*,
No. 2021-1783, 2022 U.S. App. LEXIS 17726 (Fed. Cir. June 28,
2022) .............................................................................................. 12

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (2012) ........................................................................ 11

*Qingdao Sea-Line Trading Co. v. United States*,
766 F.3d 1378 (Fed. Cir. 2014) ...................................................... 12

*Sao Ta Foods Joint Stock Company v. United States*,
475 F.Supp.3d ................................................................................. 23

*Sao Ta Foods Joint Stock Company v. United States*,
475 F.Supp.3d 1283 (2020) ............................................................ 22

*Schaeffler Italia S.r.l. v. United States*,
781 F.Supp.2d 1358 (Ct. Int'l Trade 2011) ........................... 14, 16, 17

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ...................................................... 11

*SKF USA, Inc. v. United States*,
537 F.3d 1373 (Fed. Cir. 2008) ........................................................ 9

*Smiley v. Citibank (South Dakota)*,
  N. A., 517 U. S. 735, 742 (1996) ........................................ 10

*Star Fruits S.N.C. v. United States*,
  393 F.3d 1277 (Fed.Cir.2005) ........................................... 11

*Tak Fat Trading Co. v. United States*,
  396 F.3d 1378 (Fed. Cir. 2005) ........................................... 8

*Torrington Co. v. United States*,
  82 F.3d 1039 (Fed. Cir. 1996) ............................................. 9

*Transactive Corp. v. United States*,
  91 F.3d 232 (D.C. Cir. 1996) ............................................. 11

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ....................................................... 10

*WelCom Prods., Inc. v. United States*,
  36 CIT 1336, 865 F.Supp.2d 1340 (2012) ............................ 11

*Yantai Timken Co. v. United States*,
  31 CIT 1741, 521 F.Supp.2d 1356 (2007) ............................ 10

*Zenith Radio Corp. v. United States*,
  437 U.S. 443 (1978) ......................................................... 9

*Zhejiang Native Product & Animal By-Products Import & Export
Corp. v. United States*,
  637 F.Supp.2d 1260 (Ct. Int'l Trade 2009) .......................... 14, 15, 16

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................. 8

19 U.S.C. § 1675(a) ............................................................. 17

19 U.S.C. § 1677f-1(c)(1) ...................................................... 7

28 U.S.C. § 2637(d) ............................................................ 12

19 USC § 1677f-1(c)(2) .................................................. 15, 17

19 C.F.R. § 351.301(c)(1) ...................................................... 6

19 C.F.R. § 351.309(c) .......................................................................... 13

**Administrative**

*Aluminum Wire and Cable from the People's Republic of China:*
   *Antidumping Duty and Countervailing Duty Orders,* 84 Fed. Reg.
   70,496 (Dep't of Commerce Dec. 23, 2019) ...............................*passim*

*Aluminum Wire and Cable From the People's Republic of China:*
   *Final Results of Antidumping Duty Administrative Review; 2019–*
   *2020*, 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 7, 2021).......2, 7, 8, 18, 20

*Aluminum Wire and Cable From the People's Republic of China:*
   *Preliminary Results of Antidumping Duty Administrative Review;*
   *2019–2020*, 86 Fed. Reg. 49,306 (Dep't of Commerce Sept. 2,
   2021) ...................................................................................... 5, 27

*Antidumping Proceedings: Announcement of Change in Department*
   *Practice for Respondent Selection in Antidumping Duty*
   *Proceedings and Conditional Review of the Nonmarket Economy*
   *Entity in NME Antidumping Duty Proceedings*, 78 Fed. Reg.
   65,693, 65,693 (Dep't of Commerce Nov. 4, 2013)....................26, 29

*Cast Iron Soil Pipe from the People's Republic of China: Preliminary*
   *Affirmative Determination of Sales at Less Than Fair Value and*
   *Postponement of Final Determination*, 83 Fed. Reg. 44,567 (Dep't
   of Commerce Aug. 31, 2018) ....................................................26, 28

*Cast Iron Soil Pipe From the People's Republic of China: Final*
   *Affirmative Determination of Sales at Less Than Fair Value*, 84
   Fed. Reg. 6,767 (Dep't of Commerce Feb. 28, 2019) ........................29

*Cast Iron Soil Pipe From the People's Republic of China: Initiation of*
   *Less- Than-Fair Value Investigation,* 83 Fed. Reg. 8,053 (Dep't of
   Commerce Feb. 23, 2018)..................................................................28

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into*
   *Modules, from the People's Republic of China: Final Results of*
   *Antidumping Duty Administrative Review and Final Determination*
   *of No Shipments; 2012-2013*, 80 Fed. Reg. 40,998 (Dep't of
   Commerce July 14, 2015)............................................................23, 24

*Hydrofluorocarbon Blends from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2019-2020*, 86 Fed. Reg. 49,516 (Dep't of Commerce Sept. 3, 2021) ................. 14, 24

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) .............. *passim*

Separate Rate Application for the People's Republic of China, https://enforcement.trade.gov/nme/sep-rate-files/app-20190221/prc-sr-app-022119.pdf at 3 ("Separate Rate Application Template & Instructions") ................................................................. 19

## STATEMENT OF RELATED CASES

In accordance with Federal Circuit Rule 47.5, counsel for Intervenor Southwire Company, LLC ("Southwire") is not aware of any action that was previously before this Court or any other appellate court in or from the same civil action or proceeding in the lower court. Intervenor Southwire is are also unaware of any case pending in this Court that will directly affect or be directly affected by this Court's decision in this pending appeal.

## INTRODUCTION

Intervenor Southwire submits this response to the August 3, 2023, brief filed in the above-captioned action by Appellants Repwire LLC ("Repwire") and Jin Tiong Electrical Materials Manufacturer PTE, Ltd. ("Jin Tiong") (collectively, "Appellants") appealing the decision by the United States Court of International Trade ("CIT") to sustain the U.S. Department of Commerce's ("Commerce" or the "Department") *Final Results* in the administrative review of the antidumping duty ("AD") order covering aluminum wire and cable from the People's Republic of China.

For the reasons described below, the Court should affirm the CIT's decision because the challenged determination is reasonable, supported by substantial record evidence, and is otherwise in accordance with law.

1

**STATEMENT OF THE CASE**

This appeal involves the U.S. Department of Commerce's ("Commerce" or the "Department") *Final Results* issued in the administrative review of the antidumping ("AD") order covering aluminum wire and cable from the People's Republic China. *See Aluminum Wire and Cable From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2019–2020,* 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 7, 2021) ("*Final Results*") and the accompanying unpublished Issues and Decision Memo ("IDM"). The period of review ("POR") was June 5, 2019, through November 30, 2020. Appellants appealed the *Final Results* to the CIT, which sustained the Department's *Final Results* because it found that "Commerce's determination that Jin Tiong was not eligible for a separate rate was reasonable and supported by substantial evidence" and that "Commerce was reasonable in assessing the China-wide entity rate in light of Jin Tiong's failure to demonstrate its independence from government control." (Appx. 27). Appellants now appeal the CIT decision.

**STATEMENT OF FACTS**

On December 23, 2019, Commerce published the AD order on aluminum wire and cable from China. *See Aluminum Wire and Cable from the People's Republic of China: Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70,496 (Dep't of Commerce Dec. 23, 2019) ("Order"). On February 4, 2021,

Commerce initiated the administrative review of the AD order on aluminum wire and cable from China covering the period June 5, 2019, through November 30, 2020. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) ("*Initiation Notice*"). The *Initiation Notice* directs respondents to a Separate Rate Application ("SRA") on Commerce's website. It also states that "{f}or exporters and producers who submit a Separate Rate Application or Certification Southwire and subsequently are selected as mandatory respondents, these exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the questionnaire as mandatory respondents." *Id.*

On July 28, 2021, Commerce determined that it had erroneously issued its questionnaire to Jin Tiong after Jin Tiong failed to submit a timely SRA, and, accordingly, Commerce withdrew the questionnaire and removed it from the record. *See* Memorandum, "*Administrative Review of the Antidumping Duty Order of Aluminum Wire and Cable from the People's Republic of China; 2019-2020 – Rescission of Questionnaire Issued to Jin Tiong Electrical Materials Manufacturer PTE, Limited*," (July 28, 2021) (Appx. 108 –109); Memorandum, "*Administrative Review of the Antidumping Duty Order of Aluminum Wire and Cable from the People's Republic of China; Removal of Questionnaire Issued to Jin Tiong Electrical Materials Manufacturer PTE, Limited*," (July 29, 2021). (Appx. 110).

3

Jin Tiong objected to Commerce's decision to withdraw its questionnaire on July 30, 2021. *See* Letter from David J. Craven to the U.S. Dep't of Commerce regarding, "*Aluminum Wire and Cable from the People's Republic of China, A-570- 095; Objection to Withdrawal of Questionnaire*" (July 30, 2021). (Appx. 115–180). On August 5, 2021, Jin Tiong submitted a Section A questionnaire response. Southwire submitted comments on August 9, 2021, requesting Commerce to remove Jin Tiong's Section A questionnaire response from the record because Jin Tiong failed to submit a timely SRA. *See* Letter from Sydney H. Mintzer to the U.S. Dep't of Commerce regarding, "*Aluminum Wire and Cable from the People's Republic of China: Response to Jin Tiong's Objection to Withdrawal of Questionnaire; Request that the Department Reject Jin Tiong's Section A Questionnaire Response*" (Aug. 9, 2021). (Appx 182–187). On August 16, 2021, Commerce rejected Jin Tiong's Section A questionnaire and removed it from the record. *See* Memorandum from Sean Carey, Int'l Trade Specialist, to the File, regarding, "*Administrative Review of the Antidumping Duty Order of Aluminum Wire and Cable from the People's Republic of China; Rejection and Removal of Jin Tiong Electrical Materials Manufacturer PTE, Limited's Unsolicited Section A Questionnaire Response*" (Aug. 16, 2021). (Appx. 188–189).

Commerce published its *Preliminary Results* on September 2, 2021. *See Aluminum Wire and Cable From the People's Republic of China: Preliminary*

*Results of Antidumping Duty Administrative Review; 2019–2020*, 86 Fed. Reg. 49,306 (Dep't of Commerce Sept. 2, 2021). After receiving comments from Jin Tiong and rebuttals from domestic interested parties Encore Wire Corporation ("Encore") and Southwire (collectively, "Intervenors"), on December 27, 2021, Commerce published its *Final Results*, affirming that it had acted in line with past practice in withdrawing Jin Tiong's questionnaire when it failed to submit a timely SRA. *See Final Results*. On January 25, 2022, Appellant Repwire filed an action before the U.S. Court of International Trade ("CIT") contesting the *Final Results*. *See* Complaint (Feb, 21. 2022), ECF No. 9. On July 1, 2022, Appellants filed a Rule 56.2 Motion for Judgment on the Agency Record; Pls' Mot. for J. on the Agency R. (July 1, 2022), ECF No. 34 ("Plaintiffs' Mot.").

On March 20, 2023, the CIT sustained Commerce's determination to reject Jin Tiong's questionnaire response and apply the China-wide entity antidumping duty rate to Jin Tiong. (Appx. 29–30). The CIT found that Commerce's determination to withdraw the questionnaire issued to Jin Tiong and reject Jin Tiong's questionnaire response was not unlawful and an abuse of discretion because 1) "Jin Tiong was on notice of the 30-day {separate rate} application deadline as an interested party because Jin Tiong was identified in the *Initiation Notice* published in the Federal Register"; 2) "Jin Tiong failed to submit a separate rate application by the 30-day deadline," a finding that Jing Tiong did not dispute;

3) Commerce issued the questionnaire to Jin Tiong in error; and 4) Commerce rescinded the questionnaire approximately two weeks after issuing the questionnaire and before Jin Tiong responded, explaining that the questionnaire had been issued in error. (Appx. 22–24). Furthermore, the CIT found Commerce's decision to reject Jin Tiong's questionnaire was not unlawful and an abuse of discretion because Commerce has discretion to reject unsolicited filings under 19 C.F.R. § 351.301(c)(1). (Appx. 24). Thus, because the court had found that the rescission of the erroneous questionnaire was reasonable, it held that Commerce's subsequent determination that Jin Tiong's submission was unsolicited was also reasonable. (Appx. 24–25).

Finally, the court found that Commerce lawfully determined that Jin Tiong was not eligible for a separate rate and applied the China-wide entity rate. (Appx. 27). As the court had found that "Jin Tiong failed to file a timely separate rate application," the CIT concluded "Commerce's determination that Jin Tiong was not eligible for a separate rate was reasonable and supported by substantial evidence." (Appx. 27). The court also concluded "Commerce was reasonable in assessing the China-wide entity rate in light of Jin Tiong's failure to demonstrate its independence from government control." *Id*.

Intervenor Southwire seeks the affirmance of the CIT's affirmance of Commerce's *Finals Results*.

# SUMMARY OF THE ARGUMENT

- Appellants did not argue in their brief to Commerce that the Department could only limit respondents when the number of respondents is large. As such, Appellants failed to exhaust their administrative remedies, and this Court should decline to entertain this new argument. Even if this Court does not find that Appellants failed to exhaust their administrative remedies, Commerce's decision not to assign Jin Tiong a separate rate rested not on the exception provided in 19 U.S.C. § 1677f-1(c)(1) but on Jin Tiong's failure to submit a timely SRA. As such, Appellants' argument is irrelevant to the facts of this case.

- Commerce had discretion to revoke Jin Tiong's questionnaire after Jin Tiong failed to file an SRA. Moreover, Commerce acted reasonably in line with its discretion to set and maintain deadlines in antidumping proceedings when it withdrew Jin Tiong's questionnaire after failing to receive a timely SRA, as clearly instructed in the *Initiation Notice* and SRA, or a timely extension request. Further, Commerce acted in line with its statutory obligations when it revoked Jin Tiong's questionnaire from the official record.

- The *Initiation Notice* and SRA clearly explain that companies like Jin Tiong must submit an SRA. Moreover, Jin Tiong had actual notice that a SRA was mandatory even if the company was selected as a mandatory respondent and

issued a questionnaire later in time. Thus, there were no additional opportunities for Jin Tiong to demonstrate its eligibility for a separate rate.

## I.    STANDARD OF REVIEW

This Court applies the same standard of review used by the CIT in reviewing determinations made by Commerce and will reject the findings of Commerce if they are unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *Dupont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005); *see also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005) ("A decision of the Court of International Trade reviewing a final antidumping determination by Commerce is reviewed 'anew' by this court by reapplying the standard of review as applied by the trial court when it reviewed the final determination by Commerce." (citations omitted)).

Accordingly, this Court can reverse the CIT's decision and reject Commerce's *Final Results* only if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *SKF USA, Inc. v. United States,* 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence is "something less

than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (citations omitted).

When reviewing Commerce's actions in antidumping proceedings, the Court uses the two-step test set forth in *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837* (1984). In the first step, the Court determines "whether Congress has directly spoken to the precise question at issue" and has expressed its intent. *Id*. at 842-43. If the statute has not directly spoken to the issue, for the second step, the Court must assess whether Commerce's interpretation is a "sufficiently reasonable" interpretation of the statute. *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450-51 (1978) (citations omitted). In order to determine whether an interpretation is "sufficiently reasonable," "{a}ny reasonable construction of the statute is a permissible construction." *Torrington Co. v. United States*, 82 F.3d 1039, 1044 (Fed. Cir. 1996). Moreover, the Supreme Court has stated that "{t}he whole point of Chevron is to leave the discretion provided by the ambiguities of a statute with the implementing agency" and that when it exercises such discretion, Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *See United States v. Eurodif S.A.*, 555 U.S. 305, 316

(2009) (quoting *Smiley v. Citibank (South Dakota)*, N. A., 517 U. S. 735, 742 (1996)).

Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings. *See NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1206–07 (Fed. Cir. 1995); *see also Yantai Timken Co. v. United States,* 31 CIT 1741, 1755, 521 F.Supp.2d 1356, 1371 (2007) ("In order for Commerce to fulfill its mandate to administer the antidumping duty law, including its obligation to calculate accurate dumping margins, it must be permitted to enforce the time frame provided in its regulations."). Agency decisions on enforcement and administration of regulatory requirements that call for an exercise of discretion are examined based on whether there was an abuse of discretion. *See, e.g., Brennan v. Dep't of Health & Human Servs.,* 787 F.2d 1559, 1564 (Fed. Cir.), *cert. denied,* 479 U.S. 985, 107 S.Ct. 573, 93 L.Ed.2d 577 (1986). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *Dongtai Peak Honey Indus. Co. v. United States,* 38 CIT 334, 971 F.Supp.2d 1234, 1239 (2014) (quoting *WelCom Prods., Inc. v. United States,* 36 CIT 1336, 865 F.Supp.2d 1340, 1344 (2012) (citing *Star Fruits S.N.C. v. United States,* 393 F.3d 1277, 1281 (Fed.Cir.2005))). In an abuse of discretion review, "an agency action is arbitrary

when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996). Moreover, "{a} court cannot set aside application of a proper administrative procedure because it believes that properly excluded evidence would yield a more accurate result if the evidence were considered." *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751 (2012).

## II.   ARGUMENT

As discussed further below, Commerce reasonably acted within its discretion and in line with prior practice and precedent when it revoked Jin Tiong's questionnaire and removed it from the record when Jin Tiong did not submit a timely SRA. Commerce also correctly determined that Jin Tiong was not eligible for a separate rate and applied to it the China-wide entity rate. Appellants' arguments to the contrary lack merit.

### A. The Court Should Reject Appellants' Argument that Commerce Was Required to Assign Jin Tiong An Individual Rate Because There Were Only Two Respondents

1. Appellants Did Not Exhaust Their Administrative Remedies Before Arguing that Commerce Was Required To Assign Jin Tiong An Individual Rate Because Two Respondents Is Not A "Large Number"

The Court's "review is limited to the record before Commerce in the particular review proceeding at issue." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1385 (Fed. Cir. 2014). This Court has made clear that it will

not entertain new arguments made for the first time in the Court's judicial review of Commerce's decision and not to Commerce itself: "We will not create a new record, entertain new arguments, and reverse Commerce on the basis of them." *Jacobi Carbons AB v. United States*, 619 F. App'x 992, 1001 (Fed. Cir. 2015). Indeed, under 28 U.S.C. § 2637(d), the courts "shall, where appropriate, require the exhaustion of administrative remedies." The courts "generally take{} a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007); *see also Prime Time Commerce, LLC v. United States*, No. 2021-1783, 2022 U.S. App. LEXIS 17726, at *10 (Fed. Cir. June 28, 2022). "{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before" the Department. *Corus Staal* BV, 502 F.3d at 1379. Furthermore, Commerce's regulations require exhaustion "as applied to challenges to antidumping determinations, and require a challenger to submit a case brief to Commerce that contains all the arguments that the submitter deems relevant." *Id.*; 19 C.F.R. § 351.309(c).

Here, Appellants argue that the Department was not allowed to limit respondents because the "statute and regulations only permit the Department to limit respondents when the number of respondents is large," and two respondents is not a large number. *See* App. Br. at 8. Appellants, however, failed to make this

argument before Commerce. Repwire Jin Tiong Case Brief (Appx. 214 –215).
They also did not make this argument in their brief to the CIT, instead presenting it
for the first time before this Court. App. Br. at 8–9 (Appellants commenting only in
passing that the Department did not need to limit the number of respondents
because there were only two potential respondents). Furthermore, Appellants
advance no compelling reason why the Court should waive the exhaustion of
administrative remedies: Appellant do not allege, nor could they, that Jin Tiong
was "denied access to critical information prior to the time its case brief {to
Commerce} was due," that Commerce did not change its position, or that "an
important court decision was issued after the party's case brief would have been
filed." *Corus Staal BV*, 502 F.3d at 1381. During the administrative review,
Appellants were well aware of the number of respondents, as well as the applicable
statute and regulations and could have made this argument before Commerce.
Instead, Appellants declined to do so, and now ask this Court to reverse
Commerce's decision on the basis of a claim that the Department never had the
opportunity to consider during its review.

Consistent with previous decisions, this Court should find that Appellants
failed to exhaust their administrative remedies and thus are precluded from arguing
that Jin Tiong was entitled to an individual rate determination because there were
not a large number of respondents.

2.  Appellants' Reliance on *Zhejiang* and *Schaeffler* Is Misplaced Because Those Cases Do Not Address Situations Where the Respondent Failed to Timely Submit an SRA

Even if the Court does not find that Appellants failed to exhaust their administrative remedies, Appellants' reliance on *Zhejiang* and *Schaeffler* is misplaced and fails to support a claim that the Department was required to assign Jin Tiong a separate rate.

In non-market economy ("NME") reviews, it is Commerce's practice not to individually examine a respondent if they do not submit a separate rate application, even when that respondent is the only company subject to review. *See, e.g., Hydrofluorocarbon Blends from the People's Republic of China: Final Results of the Antidumping Duty Administrative Review; 2019–2020*, 86 Fed. Reg. 49,516, 49,517 (Dep't of Commerce Sept. 3, 2021) ("*Hydrofluorocarbons from China*"). *Hydrofluorocarbons from China* clearly establishes that a decision not to review a company can rest on reasons outside of the exception provided for in 19 USC § 1677f-1(c)(2), as is the case here.

Appellants argue that, under 19 U.S.C. § 1677f-1(c)(2), the Department does not have discretion to assign an individual rate determination when there are only two respondents. App. Br. at 12. However, Commerce did not decline to review Jin Tiong because of a "large number" of respondents but because Jin Tiong failed to submit a SRA by the 30-day deadline. Final IDM at 4-5. Indeed, in the cases to

which Appellants cite, either the respondent submitted a timely separate rate application, or the court declined to remand the determination to Commerce because the respondent did not take the steps necessary to entitle itself to a separate rate examination.

Appellants cite to *Zhejiang Native Product & Animal By-Products Import & Export Corp. v. United States*, 637 F.Supp.2d 1260 (Ct. Int'l Trade 2009), claiming that the court there refused to accept Commerce's conclusion that its workload was too heavy to examine the respondent, and that four respondents did "not appear to satisfy the requirement that the number be 'large'{.}" What Appellants fail to mention, however, is that the court also stated, "{P}erhaps *most importantly*, Zhejiang timely filed its separate rate certification and Q&V {quantity & value} questionnaire response but did not file a response to {questionnaire section C or D} for reasons *not of its own making*." 637 F. Supp. at 1265 (emphasis added). Commerce only rejected Jin Tiong's submission because Jin Tiong did not timely submit their SRA, which was a prerequisite to receiving an individual rate. Thus, the rejected questionnaire was completely of Jin Tiong's own making. In stark contrast, Zhejiang *did* meet the prerequisite to be chosen as a voluntary respondent, and as such Appellants' reliance on this case is misplaced.

Appellants also rely on *Schaeffler Italia S.r.l. v. United States*, 781 F.Supp.2d 1358 (Ct. Int'l Trade 2011), which they claim stands for the position

that two respondents do not constitute a "large number." App. Br. at 13–14. However, in that case, submitting timely responses to the Department's Q&V questionnaires was a pre-requisite to receiving an individual rate, and the respondent in that case met this requirement. 781 F. Supp. 2d at 1361. Again, as with *Zhejiang*, this is in stark contrast to Jin Tiong's failure to submit a timely SRA. Moreover, the court in *Schaeffler* actually *declined* to remand the case to Commerce for a redetermination, in part because Schaeffler had withdrawn its voluntary respondent request: "The flaw in these equitable arguments is that Schaeffler Italia *would have received its own rate, either during the review or upon remand, by allowing its voluntary respondent request to stand*{.}" 781 F. Supp. 2d at 1366. Similarly, even assuming that Jin Tiong could establish in an SRA that it was entitled to a separate rate, Jin Tiong would have received its own rate, either during the review or upon remand, had it submitted a timely SRA. Thus, not only is Appellants' reliance on *Schaeffler* misplaced when the case is examined in its full context, but *Schaeffler* in fact supports Commerce's determination that Jin Tiong was not entitled to a separate rate: Jin Tiong, like Schaeffler, had an avenue before it to obtain a separate rate, but it failed to use it, and Appellants now ask this Court to correct *Jin Tiong's* mistake. This Court, consistent with its precedent, should refuse to do so.

**B. Commerce Did Not Abuse Its Discretion When It Revoked Jin Tiong's Questionnaire after Jin Tiong Failed to File an SRA**

As established in **Section II.A.2** above, Commerce's decision not to individually examine Jin Tiong rested not on the exception provided in 19 U.S.C. § 1677f-1(c)(2) but on Jin Tiong's failure to submit a timely SRA. For the reasons set forth below, Commerce had discretion to revoke Jin Tiong's questionnaire after it failed to file a timely SRA, and Commerce did not abuse its discretion by doing so.

1.  The Statute Does Not Unambiguously Address The Submission Of An Untimely SRA And Thus The Court Must Determine Whether Commerce Abused Its Discretion

The first step of *Chevron* requires a determination of whether the statute is unambiguous with regard to expressing Commerce's intent. 19 U.S.C. § 1675(a), the statute which governs administrative reviews of antidumping duty orders, does not state a requirement that Commerce determine separate rates for certain respondents in an annual review of an administrative duty order. Therefore, Congress "left a gap for {Commerce} to fill," allowing Commerce to promulgate the policies and procedures for conducting an administrative review. *See Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782. Because the statute is silent on the issue of separate rates for certain respondents, the intent of Congress was thus not unambiguous and the Court must thus turn to the second step of *Chevron* and

17

determine whether Commerce's actions in this proceeding were "sufficiently reasonable."

    2.  <u>The Language of the SRA and *Initiation Notice* Clearly Set Forth the Requirement for Parties to Qualify for a Separate Rate</u>

Commerce acted well within its discretion when it found that "Jin Tiong did not timely file an SRA, and, thus, did not timely attempt to demonstrate its separate rate eligibility. Having not met this requirement, Jin Tiong was not eligible for individual examination." *See Final Results* at 5. This conclusion is in line with Commerce's *Initiation Notice* and SRA instructions. Both the *Initiation Notice* and the SRA required all firms, regardless of where located, to submit an SRA within 30 days of publication of the *Initiation Notice.* The *Initiation Notice* instructs that, "all firms listed below that wish to qualify for separate rate status in the administrative reviews . . . must complete, as appropriate, either a separate rate application or certification, as described below" and "{e}ntities that currently do not have a separate rate from a completed segment of the proceeding should timely file a Separate Rate Application to demonstrate eligibility for a separate rate in this proceeding." *Initiation Notice* at 8,167. Jin Tiong was one of the listed firms. *Id.* at 8,168. The *Initiation Notice* also clearly states "{e}ntities that currently do not have a separate rate from a completed segment of the proceeding should timely file a Separate Rate Application to demonstrate eligibility for a separate rate in this proceeding . . . due to Commerce no later than 30 calendar days after publication of

this Federal Register notice" (March 8, 2021) and "{t}he *deadline and requirement* for submitting a Separate Rate Application applies equally to NME-owned firms, wholly foreign-owned firms, and foreign sellers that purchase and export subject merchandise to the United States." *Id.* at 8,167 (emphasis added). The text of the SRA echoes this language: it instructs applicants that the deadline for completing and submitting the form is 30 days after the publication of the *Initiation Notice*. *See* Separate Rate Application for the People's Republic of China, https://enforcement.trade.gov/nme/sep-rate-files/app-20190221/prc-sr-app-022119.pdf at 3 ("Separate Rate Application Template & Instructions"). Thus, the instructions for both the *Initiation Notice* and the SRA clearly stated that to be entitled to a separate rate rather than subject to the country-wide rate, parties such as Jin Tiong must submit an SRA. *See Initiation Notice* at 8,167.

Without receiving a timely SRA from Jin Tiong, Commerce acted within its discretion and prior practice in finding that the respondent was no longer eligible for a separate rate. As Commerce stated in the *Final Results*, "{i}n proceedings involving NME countries, Commerce begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate." *See Final Results* at 5. An exporter or producer may rebut this presumption by showing *de jure* and *de facto* independence from government control. *See Amanda Foods (Vietnam) Ltd. v.*

19

*United States*, 33 CIT 1407, 647 F.Supp.2d 1368, 1374 n. 9 (2009) (citing to *Decca*

*Hospitality Furnishings, LLC v. United States*, 29 CIT 920, 921, 391 F.Supp.2d

1298, 1300 (2005)). Moreover, Commerce made clear that while a separate rate

application is required to determine eligibility for a separate rate, if a respondent is

selected as a mandatory respondent then it will have to resubmit that information in

response to Commerce's questionnaire. *See Final Results* at 5; *Initiation Notice* at

8167. Thus, Commerce acted within its discretion and in accordance with its own

instructions when it revoked Jin Tiong's questionnaire after it failed to complete

the necessary steps to rebut the presumption of government control.

     In *Dongtai Peak Honey Indus. Co., Ltd. v. United States*., 777 F.3d 1343

(2015), the Federal Circuit affirmed the CIT's findings that Commerce properly

exercised its discretion in denying the plaintiff's untimely filings in an

administrative review of an antidumping duty order after Commerce granted one

extension request and the plaintiff ultimately missed a subsequent deadline. As in

the instant case, Commerce used its discretion to set and enforce deadlines on

submission of the questionnaire responses. Moreover, in this case, Jin Tiong never

filed an extension request for the SRA, and did not even comment on the matter

until after Commerce revoked its questionnaire. *See* Letter from David J. Craven to

the U.S. Dep't of Commerce regarding, "*Aluminum Wire and Cable from the*

*People's Republic of China, A-570-095; Objection to Withdrawal of*

*Questionnaire*" (July 30, 2021) (Appx. 115– 180). Thus, even more so than in

*Dongtai Peak*, Commerce clearly acted within its discretion to set deadlines for the

submission of the SRA in this proceeding.

Similarly, in *Jiangsu Jiasheng Photovoltaic Technology Co., Ltd. v. United

States*, 28 F.Supp.3d 1317 (2014), the Court upheld Commerce's rejection of

plaintiff Jiasheng's SRA based on Jiasheng's failure to properly and timely submit

responses to the Q&V questionnaire, as explicitly required in the initiation notice

for the investigation, the cover letter for the Q&V questionnaire, and in the

instructions to the Q&V questionnaire. As a result, that respondent was assigned

the country-wide rate. The Court found that "Commerce has discretion to set and

enforce deadlines and reject untimely filed submissions" and thus Commerce did

not abuse its discretion in rejecting plaintiff Jiasheng's SRA based on its failure to

submit the separate required Q&V questionnaire response. *See Jiasheng* at 1328–

29. Similar to *Jiasheng*, in this case, Commerce clearly set deadlines for submitting

an SRA. Jin Tiong failed to follow instructions when it submitted its questionnaire

response without filing an SRA, as clearly contemplated in the *Initiation Notice*

and the SRA instructions. Additionally, like in *Jiasheng*, Jin Tiong had a

significant amount of time to attempt to remediate this error – 142 days between

March 8, 2022, and Commerce's rescission of Jin Tiong's questionnaire on July

28, 2022. Respondent selection is a critical juncture in an administrative review

and Jin Tiong's failure to submit a SRA prevented Commerce from continuing the process. Commerce has a policy interest in ensuring that respondents are treated similarly across all administrative reviews. Thus, like in *Jiasheng*, Commerce acted reasonably in enforcing the deadlines it set.

Moreover, this was not a case where Jin Tiong missed a submission deadline by a day due to a technology error, or that Commerce's instructions lacked clarity. *See, e.g., Artisan Mfg. Corp. v. United States,* 38 CIT 682, 978 F.Supp.2d 1334 (2014); *Sao Ta Foods Joint Stock Company v. United States*, 475 F.Supp.3d 1283 (2020). Rather, Jin Tiong failed to properly follow Commerce's clearly stated instructions. Therefore, given Jin Tiong's failure to follow Commerce's clear instructions to file an SRA by March 8, 2022, Commerce acted within its discretion and did not act arbitrarily in withdrawing Jin Tiong's questionnaire and subjecting it to the country-wide rate. Here, unlike in *Sao Ta Foods Joint Stock Company*, where the Court found that Commerce acted contrary to the SRA and separate rate certification ("SRC") instructions and Commerce's own policy, Commerce clearly articulated instructions to qualify for separate rate status in both the *Initiation Notice* and the SRA, and followed those procedures in rejecting Jin Tiong's questionnaire response. *See Sao Ta Foods Joint Stock Company v. United States,* 475 F.Supp.3d 1283, 1291 (2020). Commerce did "state and explain its practice" in the *Final Results,* where it clearly set forth its policy, reasoning, and past practice

in revoking Jin Tiong's questionnaire. *See Final Results* at 4-6. Thus, Commerce

acted within its discretion and in line with expressly stated instructions when it

rejected and removed from the record Jin Tiong's Section A questionnaire

response. *See* Memorandum from Mark Hoadley, Program Manager, AD/CVD

Operations, Office VII, to the File, regarding, "*Rescission of Questionnaire Issued*

*to Jin Tiong Electrical Materials Manufacturer PTE Limited*" (July 28, 2021)

(Appx. 108–109); Memorandum from Sean Carey, Int'l Trade Specialist, to the

File, regarding, "*Rejection and Removal of Jin Tiong Electrical Materials*

*Manufacturer PTE, Limited's Unsolicited Section A Questionnaire Response*"

(Aug. 16, 2021) (Appx. 188–189).

    3.  <u>Commerce Acted in Line With Its Own Practice When It Revoked Jin</u>
          <u>Tiong's Questionnaire</u>

Commerce's practice in administrative reviews is to deny separate rate status

to respondents who do not submit a required SRA. In the 2012–2013 antidumping

administrative review of *Crystalline Silicon Photovoltaic Cells, Whether or Not*

*Assembled Into Modules, From the People's Republic of China*, Commerce denied

a separate rate to respondent ERA Solar Co., Ltd. ("ERA") "due to its failure to

submit any separate rate information." *See Crystalline Silicon Photovoltaic Cells,*

*Whether or Not Assembled Into Modules, from the People's Republic of China:*

*Final Results of Antidumping Duty Administrative Review and Final Determination*

*of No Shipments*; 2012-2013, 80 Fed. Reg. 40,998 (Dep't of Commerce July 14,

2015) ("*Crystalline Silicon Photovoltaic Cells*"), and accompanying Issues and

Decision Memorandum at 11–13. In revoking ERA's questionnaire, Commerce

stated that ERA's failure to submit separate rate information was "a failure to

comply with the Department's well established separate rate methodology . . . and

thus consider{ed} ERA to be part of the PRC-Wide Entity." *Id.* at 13. More

recently, in *Hydrofluorocarbons from China*, Commerce determined that

"PureMann, Inc. (PureMann), the sole company subject to this review, did not file

an SRA and has not demonstrated its eligibility for separate rate status; therefore,

PureMann is part of the China-wide entity." *See Hydrofluorocarbon Blends from

the People's Republic of China: Final Results of the Antidumping Duty

Administrative Review; 2019–2020*, 86 Fed. Reg. 49,516, 49,517 (Dep't of

Commerce Sept. 3, 2021) ("*Hydrofluorocarbons from China*"). Similar to *Dongtai

Peak*, in this case, Commerce acted reasonably when it upheld a clearly established

deadline that was critical to proceeding with the review. Because Commerce acted

reasonably in enforcing a clearly established SRA deadline and in line with prior

precedent, Commerce did not act in an arbitrary and capricious manner when it

revoked Jin Tiong's questionnaire after Jin Tiong failed to follow clearly stated

instructions and submit a timely SRA.

**C. Appellants' Arguments That Commerce Committed Error by Revoking Jin Tiong's Questionnaire Are Without Merit**

Appellants argue that Commerce's determination in this proceeding was unlawful because: (1) Commerce failed to interpret its questionnaire language using the rules of statutory interpretation; and (2) Commerce violated its own practice when it limited respondent selection to companies that had filed SRAs. *See* App. Br. at 14–20. Both arguments are without merit for the reasons set forth below.

1. Appellants Incorrectly Argue That Questionnaire Language Is Equivalent To Statutory Language

Appellants argue that the questionnaire purportedly offers three distinct scenarios for receiving a separate rate in an administrative review, one of which does not allegedly contemplate submission of a SRA. By "ignoring" the language in the questionnaire, Appellants argue that Commerce rendered the "express language" of the questionnaire "a nullity" when it decided to revoke Jin Tiong's questionnaire. *See* App. Br. at 15. Appellants cite to *Koyo Seiko Co., Ltd v. U.S.*, 36 F.3d 1565 (Fed. Cir. 1994) and *NSK Ltd. v. U.S.*, 115 F.3d 965 (Fed. Cir. 1997) in support of their argument. However, in both cases, the court reviewed the proper interpretation of governing statutory provisions, not other pronouncements of government. *Koyo Seiko Co.*, 36 F.3d at 1570 ("In reviewing a judgment of the Court of International Trade, this court decides *de novo* the proper interpretation of

25

the governing statutory provisions."); *NSK Ltd.*, 115 F.3d at 972 ("In determining

the lawfulness of an agency's construction of a statute, we are guided by the

Supreme Court's decision in *Chevron*{.}"). Appellants fail to cite to any precedent

to support the argument that the rules of statutory interpretation apply to every

statement emanating from the government. For this reason alone, Appellants'

argument should fail.

Second, Appellants provide no evidence to support their claim that

Commerce provides three distinct scenarios for obtaining a separate rate. Indeed,

all the evidence demonstrates the opposite. In support of their claim, Appellants

cite to language in the questionnaire issued to HengTong in *Cast Iron Soil Pipe*

*From the People's Republic of China*. App Br. 14–15; Appx. 151. However,

because the selection requirements in an investigation and an administrative review

differ, precedent from an investigation is unpersuasive. *See, e.g., Antidumping*

*Proceedings: Announcement of Change in Department Practice for Respondent*

*Selection in Antidumping Duty Proceedings and Conditional Review of the*

*Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 Fed. Reg.

65,693, 65,693 (Dep't of Commerce Nov. 4, 2013) (making changes to the

Department's current practice for respondent selection in antidumping

administrative reviews but not in investigations).

The *Initiation Notice* and SRA in this administrative review clearly explain

that companies like Jin Tiong must submit an SRA. *See Preliminary Results* at

49,307. Moreover, the *Initiation Notice* clearly states that:

> For exporters and producers who submit a Separate Rate Application
> or Certification and subsequently are selected as mandatory
> respondents, these exporters and producers will no longer be eligible
> for separate rate status unless they respond to all parts of the
> questionnaire as mandatory respondents.

*Initiation Notice* at 8,167. Therefore, Jin Tiong had actual notice that a SRA was

mandatory *even if the company was selected as a mandatory respondent and issued

a questionnaire later in time*. Contrary to Appellants' claim, there are no "distinct

opportunities" to demonstrate eligibility for a separate rate. As such, Appellants'

argument should be rejected.

    2.  <u>Commerce Did Not Act Arbitrarily When It Revoked Jin Tiong's
Questionnaire Based on a Failure to Submit a Timely SRA</u>

Appellants argue that Jin Tiong was subject to "disparate" treatment when

Commerce revoked Jin Tiong's questionnaire after Jin Tiong failed to submit a

SRA, citing to *Dongbu Steel Co., Ltd. v. US*, 635 F. 3d 1363 (Fed. Cir. 2011). *See*

App. Br. at 18. However, the Court in *Dongbu* further stated that the standard for

finding a decision to be "arbitrary {is} when the agency offers insufficient reasons

for treating similar situations differently." *Dongbu* at 1371 (citing to *Nat'l Org. of*

*Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365 (2001)

(remanding to Commerce to provide a reasonable explanation for its inconsistent

interpretation in virtually identical statutory language in related statutes)). In this

case, Appellants have failed to articulate an instance where Commerce interpreted

a term separately or differed from past practice in the context of an administrative

review.

Appellants cite *Cast Iron Soil Pipe From the People's Republic of China* to

support the proposition that Commerce has previously selected a mandatory

respondent that has failed to submit a SRA and thus its rejection of Jin Tiong in the

instant case is arbitrary. *See* App. Br. at 16–17. However, that case provides no

support for Appellants' claim. As stated in Commerce's Preliminary Determination

in that investigation: "On March 28, 2018, we received SRAs from 14 entities,

inclusive of the mandatory respondents HengTong and Sibo." *Cast Iron Soil Pipe*

*from the People's Republic of China: Preliminary Affirmative Determination of*

*Sales at Less Than Fair Value and Postponement of Final Determination*, 83 Fed.

Reg. 44,567 (Dep't of Commerce Aug. 31, 2018) ("*Cast Iron Soil Pipe*") and

accompanying Issues and Decision Memorandum at 8. Therefore, Commerce

clearly believed at the time that HengTong had submitted a SRA, consistent with

its instruction in the initiation notice of that investigation requiring all such parties

to submit one. *See Cast Iron Soil Pipe From the People's Republic of China:*

*Initiation of Less- Than-Fair Value Investigation,* 83 Fed. Reg. 8,053 (Dep't of Commerce Feb. 23, 2018) (stating that "{i}n order to obtain separate rate status in an NME investigation, exporters and producers must submit a separate-rate application.") Appellants claim that HengTong, in fact, failed to submit a SRA. *See* App. Br. at 17. However, even if true, it is clear that Commerce assigned HengTong a separate rate based on the belief that HengTong had filed one. Appellants claim this belief is "not credible" and that the "Court can correctly conclude that the {Department}'s determination at the time of the issuance of the questionnaire base based on the correct facts {that HengTong had not filed a SRA}." *Id.* at 19. Yet Appellants provide no evidence to support this claim, stating instead that the Court should ignore the reasonable explanation of the error that the Department provided in the preliminary determination of that investigation. Absent any evidence to the contrary, it is clear that Commerce did not articulate a policy or change in practice to the contrary in its final determination in that investigation. *See Cast Iron Soil Pipe From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 6,767 (Dep't of Commerce Feb. 28, 2019). Therefore, *Cast Iron Pipe* fails to support Appellants' claim that Commerce acted in an arbitrary or capricious manner.

In any event, as discussed in **Section II.C.1** above, because the selection requirements in an investigation and an administrative review differ, precedent

from an investigation would be unpersuasive. *See, e.g., Antidumping Proceedings: Announcement of Change in Department Practice for Respondent Selection in Antidumping Duty Proceedings and Conditional Review of the Nonmarket Economy Entity in NME Antidumping Duty Proceedings*, 78 Fed. Reg. 65,693, 65,693 (Dep't of Commerce Nov. 4, 2013) (making changes to the Department's current practice for respondent selection in antidumping administrative reviews but not in investigations). As discussed in **Section II.B.3** above, Commerce acted in line with its own precedent to determine that Jin Tiong was not eligible for separate rate status. Appellants fail to cite to a single case to the contrary, or any other basis to conclude that Commerce abused its discretion. As such, Appellants' argument should be rejected.

## III.    CONCLUSION AND RELIEF SOUGHT

Intervenor Southwire agrees with Appellants that this is a simple case, although for very different reasons. Regardless of whether Appellants exhausted their administrative remedies, Commerce's decision not to assign Jin Tiong a separate rate rested not on the exception provided in 19 U.S.C. § 1677f-1(c)(1) but on Jin Tiong's failure to submit a timely SRA. In NME administrative reviews, Commerce has repeatedly required submission of a timely SRA to receive a separate rate. Furthermore, because the statute is silent on the issue of separate rates for certain respondents, Commerce had discretion to revoke Jin Tiong's

questionnaire after Jin Tiong failed to file an SRA. Moreover, Commerce acted reasonably in line with its discretion to set and maintain deadlines in antidumping proceedings when it withdrew Jin Tiong's questionnaire after failing to receive a timely SRA, as clearly instructed in the *Initiation Notice* and SRA, or a timely extension request. Commerce also acted in line with its statutory obligations when it revoked Jin Tiong's questionnaire from the official record. Appellants cite to no compelling reason why Commerce should have acted contrary to its practice and statutory obligations, and as such its arguments are without merit.

For the foregoing reasons, Southwire respectfully requests that this Court uphold the decision of the Court of International Trade.

Respectfully submitted,

Sydney H Mintzer
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
*Counsel to Southwire Company,
LLC*

Dated: October 13, 2023

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 23-1933

**Short Case Caption:** Repwire LLC v. United States

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes  7052  words.

- [ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- [ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 10/13/2023

Signature: /s/ Sydney H. Mintzer

Name: Sydney H. Mintzer

**FORM 30. Certificate of Service**  **Form 30**
**July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  23-1933

**Short Case Caption**  Repwire LLC v. United States

> **NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on  10/13/2023

by  ☐  U.S. Mail  ☐  Hand Delivery  ☐ Email  ☐ Facsimile
     ☑  Other: CM/ECF

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Myles Getlan | Cassidy Levy Kent (USA) LLP<br>900 19th Street NW, Suite 400<br>Washington, DC 20006  Email: mgetlan@cassidylevy.com |
| Eric J. Singley | United States Department of Justice<br>Commercial Litigation Branch, Civil Division<br>PO Box 480<br>Ben Franklin Station<br>Washington, DC 2004  Email: eric.j.singley@usdoj.gov |
| David S. Craven | Craven Trade Law LLC<br>3744 N Ashland<br>Chicago, IL 60613 Email: david.craven@tradelaw.com |
| | |
| | |

☐  Additional pages attached.

Date: 10/13/2023

Signature:  /s/ Sydney H. Mintzer

Name:  Sydney H. Mintzer