2023-1933

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

REPWIRE LLC,
Plaintiff-Appellant,

JIN TIONG ELECTRICAL
MATERIALS MANUFACTURER
PTE. LTD.,
Plaintiff-Appellant,

v.

UNITED STATES
Defendant-Appellee,

SOUTHWIRE COMPANY, LLC
Defendant-Appellee,

ENCORE WIRE CORPORATION
Defendant-Appellee.

BRIEF OF DEFENDANT-APPELLEE UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

ERIC J. SINGLEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-1273
eric.j.singley@usdoj.gov

October 20 2023                    Attorneys for Appellee

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF RELATED CASES ................................................ 1

INTRODUCTION ............................................................................. 1

STATEMENT OF THE ISSUE ......................................................... 3

STATEMENT OF THE FACTS ........................................................ 3

    I.    Legal Framework For Antidumping Duty Proceedings ...................... 3

    II.    Administrative and Trial Court Proceedings ..................................... 4

    III.    SUMMARY OF THE ARGUMENT ................................................ 7

ARGUMENT ..................................................................................... 9

    I.    Standard of Review .......................................................................... 9

    II.    Commerce Lawfully Found That Jin Tiong Failed To Demonstrate Its Eligibility For A Separate Rate .................................................. 11

    III.    The Court Should Reject Plaintiff-Appellants' Argument That Commerce Exceeded Its Authority By Not Allowing Jin Tiong To Submit A Questionaire Response ................................................... 13

    IV.    Jin Tiong Did Not Receive Disparate Treatment .............................. 15

CONCLUSION ................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ...........................................................10

*Brennan v. Dep't of Health & Human Servs.*,
   787 F.2d 1559 (Fed. Cir. 1986) *cert. denied,*
   479 U.S. 985, 107 S. Ct. 573, 93 L.Ed. 2d 577 (1986).......................10

*China Mfrs. Alliance, LLC v. United States*,
   1 F.4th 1028 (Fed. Cir. 2021) .....................................................passim

*Consol. Bearings Col. v. United States*,
   412 F.3d 1266 (Fed. Cir. 2005) ...........................................................10

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) ............................................................................10

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ............................................................................10

*Dongtai Peak Honey Indus. Co., Ltd. V. United States*,
   777 F.3d 1343 (2015) ...........................................................................11

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
   815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012).......................................11

*Mid Continent Steel & Wire, Inc. v. United States*,
   941 F.3d 530 (Fed. Cir. 2019) ............................................................13

*NTN Bearing Corp. v. United States*,
   74 F. 3d 1204 (Fed. Cir. 1995) ..................................................11, 12

*Repwire LLC v. United States*,
   628 F. Supp. 3d 1288 (Ct. Int'l Trade 2023)...................................... 7

*Shandong Huarong Mach. Co. v. United States*,
   435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006) .......................................................17

*Shandong Yongtai Grp. Co. v. United States*,
   415 F. Supp. 3d 1303 (Ct. Int'l Trade 2019).......................................................11

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997) ......................................................................4, 10

*Suntec Indus. Co. v. United States*,
   951 F.Supp. 2d 1341(Ct. Int'l Trade 2013)..........................................................11

*Transcom, Inc. v. United States,*
   182 F.3d 876 (Fed. Cir. 1999) ...........................................................................12

*Transcom, Inc. v. United States*,
   294 F.3d 1371 (Fed. Cir. 2002) ...............................................................4, 11, 12

*United States Steel Corp. v. United States*,
   348 F. Supp. 3d 1248 (Ct. Int'l Trade 2018).......................................................17

*Union Steel v. United States*,
   713 F.3d 1101 (Fed. Cir. 2013) ............................................................................9

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
   435 U.S. 519, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978)......................................13

## **STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................. 9

19 U.S.C. § 1673................................................................................................... 3

19 U.S.C. § 1675(a)(1)(B) .................................................................................... 3

19 U.S.C. § 1675(a)(1)(B), (2)(A)......................................................................... 3

19 U.S.C. § 1677f-1(c)(1) ................................................................................8, 13

19 U.S.C. § 1677f-1(c)(1)-(2) ............................................................................... 3

44 U.S.C. § 1507...................................................................................11

## **OTHER AUTHORITIES**

*Hydrofluorocarbon Blends from the People's Republic of China*,
   86 Fed. Reg. 49,516 (Sep. 3, 2021) ..................................... 16

*Aluminum Wire and Cable From the People's Republic of China*,
   86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021).................................... 6

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021)........................................ 4

*Cast Iron Soil Pipe from the People's Republic of China*,
   83 Fed. Reg 44,567 (Dep't of Commerce Aug. 31, 2018)................................ 16

*Crystalline Photovoltaic Cells, Whether or Not Assembled into Modules from the People's Republic of China*,
   80 Fed. Reg. 40,998 (Dep't of Commerce Jul. 14, 2015)............................................16

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rule 47.5, counsel for defendant-appellee, the United States, states that he is unaware of any other appeal in or from the same civil action or proceeding that previously was before this or any other appellate court under the same or similar title.  Defendant-appellee's counsel also is unaware of any other cases pending in this or any other court that may directly affect or be directly affected by this Court's decision in this appeal.

## **INTRODUCTION**

Commerce is authorized by statute to calculate and to impose a dumping margin on imported merchandise after determining that it is sold in the United States at less than fair value. In proceedings involving non-market economy (NME) countries, Commerce begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty deposit rate. It is Commerce's policy to assign all exporters of merchandise subject to an administrative review in an NME country this single, country-wide rate unless an exporter can demonstrate that it is sufficiently independent of the government to warrant a separate rate. To receive a separate, company specific margin, an exporter in a NME country must affirmatively demonstrate an absence of central government control, both in law and in fact, with respect to exports.

This appeal involves an administrative review of an antidumping order for aluminum wire and cable from the People's Republic of China, for the period of June 5, 2019, to November 30, 2020, in which plaintiff-appellant, Jin Tiong Electrical Materials Manufacturer PTE., Ltd. (Jin Tiong), was assigned the China-wide rate after failing to apply for a separate rate before a 30-day deadline established by Commerce.

In the *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 8,166 (Dep't of Commerce Feb. 4, 2021) (*Initiation Notice*), which was published on February 4, 2021, Commerce instructed Jin Tiong that in order to seek a separate rate, a completed separate rate application or certification had to be submitted no later than thirty days from the publication of the *Initiation Notice*. Jin Tiong, however, did not submit a separate rate application or certification before the 30-day deadline.

Several months later, on July 15, 2021, Commerce mistakenly issued a questionnaire to Jin Tiong. On July 28, Commerce rescinded the questionnaire, explaining that it had been issued in error. On July 30, Jin Tiong objected to Commerce's withdrawal of the questionnaire, and on August 5, 2021, Jin Tiong attempted to submit a questionnaire response. Commerce rejected Jin Tiong's unsolicited questionnaire response on August 16 and ultimately assigned the China-wide rate to Jin Tiong.

At the trial court, Jin Tiong and plaintiff-appellant, Repwire LLC (Repwire), challenged Commerce's determination to withdraw its questionnaire and to reject Jin Tiong's questionnaire response. The trial court concluded that it was not an abuse of discretion for Commerce to rescind the erroneously-issued questionnaire or to reject Jin Tiong's unsolicited response, and consequently, that Jin Tiong's

assigned rate was reasonable and supported by substantial evidence.  Plaintiff-appellants Jin Tiong and Repwire now appeal the trial court's decision.

## STATEMENT OF THE ISSUE

Whether Commerce's finding in an administrative review of an antidumping duty order, that a non-market economy exporter that failed to provide a separate rate application or certification by the deadline established by Commerce is ineligible for a separate rate, is supported by substantial evidence and in accordance with law.

## STATEMENT OF THE FACTS

### I.    Legal Framework For Antidumping Duty Proceedings

The antidumping statute is a remedial law authorizing Commerce to provide relief to domestic manufacturers by imposing duties on imports of comparable products that are sold in the United States at less than fair value when there is also injury to the domestic industry.  19 U.S.C. § 1673.  Once Commerce investigates a dumping allegation and issues an order, the agency, if requested, conducts annual reviews to determine the amount of dumping and duties owed for the review period. 19 U.S.C. § 1675(a)(1)(B), (2)(A).

The statute requires that when conducting a review, Commerce will determine a weighted average dumping margin for all known producers and exporters, although Commerce may limit its review to a "reasonable number" of

exporters when a large number of exporters or producers would make such a review impracticable. 19 U.S.C. § 1677f-1(c)(1)-(2). In reviews pertaining to non-market economies such as China, Commerce begins with a rebuttable presumption that all companies within the country are subject to government control and, thus, should be assigned a single antidumping duty cash deposit rate. *See, e.g.*, *Initiation Notice* at 8167; *see also China Mfrs. Alliance, LLC v. United States*, 1 F.4th 1028, 1030-31 (Fed. Cir. 2021) (citing *Sigma Corp. v. United States*, 117 F.3d 1401, 1405-06 (Fed. Cir. 1997). Therefore, exporters or producers under review must "'affirmatively demonstrate' entitlement to a separate, company-specific margin by showing 'an absence of central government control, both in law and in fact, with respect to exports.'" *Sigma Corp. v. United States*, 117 F.3d at 1405. Exporters or producers that fail to make such a showing are not eligible for a separate rate and are thus subject to a "countrywide rate." *Id.*; *Transcom, Inc. v. United States*, 294 F.3d 1371, 1373 (Fed. Cir. 2002).

## II.   <u>Administrative and Trial Court Proceedings</u>

On February 4, 2021, Commerce initiated a review of the antidumping order on aluminum wire and cable from China for the period of review covering June 5, 2019, through November 30, 2020. *Initiation Notice*. Commerce initiated a review of two companies, one of which was Jin Tiong Electrical Materials Manufacturer PTE Ltd. (Jin Tiong). *Id.* at 8,167. In its *Initiation Notice*,

4

Commerce notified all parties seeking to establish independence from government control and therefore eligibility for a separate rate that they must file either a separate rate application or separate rate certification. Commerce specified that the deadline for submissions of separate rate applications or certifications was 30 days after the date of publication of the *Initiation Notice*. *Id.* Commerce then added,

> For exporters and producers who submit a Separate Rate Application or Certification and subsequently are selected as mandatory respondents, those exporters and producers will no longer be eligible for separate rate status unless they respond to all parts of the questionnaire as mandatory respondents.

*Id.* Jin Tiong did not file a separate rate application by the deadline established in the *Initiation Notice*. Appx000108.

On July 15, 2021, Commerce inadvertently issued a questionnaire to Jin Tiong. *Id*. On July 28, 2021, Commerce rescinded this questionnaire, explaining that the questionnaire was erroneously issued to Jin Tiong because Jin Tiong failed to timely establish its eligibility for a separate rate. *Id.* at 1-2. Although Commerce had rescinded its questionnaire, Jin Tiong nonetheless submitted an unsolicited section A questionnaire response. Appx000188-189.

Commerce rejected that response because it was unsolicited. *Id.* Jin Tiong contested Commerce's rescission of the questionnaire and Commerce's rejection of Jin Tiong's response, arguing that filing of a timely separate rate application is

5

not a prerequisite to the filing of a questionnaire response.  Appx000116-7.  Jin

Tiong did not otherwise provide an explanation for why it failed to timely file a

separate rate application.  *Id.*

In its preliminary results, Commerce explained that because Jin Tiong failed

to timely submit a separate rate application,[1] it was not eligible for examination in

Commerce's administrative review.  *Aluminum Wire and Cable From the People's

Republic of China*, 86 Fed. Reg. 49,306 (Dep't of Commerce Sep. 2, 2021)

(preliminary results).  In its final results, Commerce continued to find that Jin

Tiong was not eligible for examination.  *Aluminum Wire and Cable from the

People's Republic of China*, 86 Fed. Reg. 73,251 (Dep't of Commerce Dec. 27,

2021) (final results) (*Final Results*), and accompanying Issues and Decision

Memorandum (IDM) at 7.

After Commerce published its final results, Repwire LLC, an importer of

merchandise subject to this review, and Jin Tiong (collectively, Repwire and Jin

Tiong) filed complaints in the United States Court of International Trade (trial

---

[1] Companies that have never established independence from the China-wide entity are required to submit Separate Rate Applications, whereas parties that have established separate rate status in a prior review may file Separate Rate Certifications.  Although Commerce requires companies to submit either a Separate Rate Application or a Separate Rate Certification to establish independence from the China-wide entity, *see Initiation Notice* at 8,167, Jin Tiong would have been required to file a Separate Rate Application because it had never previously established its status as a separate rate company.

court) challenging Commerce's determination that Jin Tiong was not eligible for a separate rate and thus not eligible for examination. Both parties alleged that Commerce's withdrawal of its questionnaire to Jin Tiong and subsequent rejection of Jin Tiong's questionnaire response was unlawful and an abuse of discretion. The trial court sustained Commerce's determination. *Repwire LLC v. United States*, 628 F. Supp. 3d 1288 (Ct. Int'l Trade 2023). Specifically, the trial court held that "Commerce's recission of the erroneous questionnaire was not an abuse of discretion, particularly when Commerce withdrew the questionnaire prior to Jin Tiong submitting a response." *Id.* at 1293. The trial court further held that, because Jin Tiong failed to timely file a separate rate certification or application, Commerce's finding that Jin Tiong was not eligible for a separate rate was reasonable and supported by substantial evidence. *Id.* at 1294.

## SUMMARY OF THE ARGUMENT

Commerce's *Initiation Notice* provided Jin Tiong with adequate notice of the requirement that all parties seeking to establish a separate rate in the administrative review must submit a separate rate application by the deadline stated in the notice. Jin Tiong failed to submit a separate rate application by that deadline. Commerce, therefore, properly found that Jin Tiong had failed to rebut the presumption of government control—a rebuttable presumption that applies to all companies within non-market economy countries—and was therefore not

eligible for individual examination in the review.

Repwire and Jin Tiong argue that Commerce exceeded its discretion by not issuing an antidumping duty questionnaire to Jin Tiong and permitting Jin Tiong to respond.  The Court has held, however, that, absent constitutional constraints or extremely compelling  circumstances, administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their duties.  *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 541 (Fed. Cir. 2019) (citing *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978)).

Plaintiff-appellants rely upon 19 U.S.C. § 1677f-1(c)(1) to argue that Commerce was required to send a questionnaire to Jin Tiong.  But that statute does not speak to or dictate a process that Commerce must follow to conduct its examinations.

Commerce acted within its discretion when it established a threshold process that parties must follow to demonstrate their eligibility for a separate rate.  Jin Tiong failed to follow Commerce's prescribed process, so Commerce was under no legal obligation to issue Jin Tiong an antidumping duty questionnaire.

 The Court should also reject Repwire and Jin Tiong's arguments that Commerce's determination was inconsistent with prior practice and that Jin Tiong received disparate treatment.  First, plaintiff-appellants rely heavily upon language

in a questionnaire from a separate proceeding, which is not part of the administrative record of this appeal and, therefore, cannot contradict the plain language of the *Initiation Notice* in this proceeding. Moreover, when the issue has been squarely before Commerce, it has found that parties that fail to timely submit separate rate information pursuant to the deadline established in Commerce's initiation notice are not eligible for a separate rate.

Repwire and Jin Tiong also rely upon a single, distinguishable determination in *Cast Iron Soil Pipe From The People's Republic of China*, in which Commerce mistakenly believed that a mandatory respondent *had timely* filed a separate rate application. But, even if *Cast Iron Soil Pipe* were not distinguishable, a different outcome in one prior proceeding is insufficient to establish a past practice that is binding upon Commerce. Plaintiff-appellants have failed to demonstrate that Jin Tiong was treated disparately.

## ARGUMENT

## I.   Standard of Review

The Court applies "the same standard used by the trial court in its consideration of Commerce's determination." *Union Steel*, 713 F.3d at 1106. Thus, although the Court recognizes that the Court of International Trade "has unique and specialized expertise in trade law," it reviews that court's decision *de novo. Id.*

The Court will uphold Commerce's determination unless it is unsupported by substantial record evidence, or otherwise unlawful. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may also be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions from the record does not render Commerce's findings unsupported by substantial evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966); *see also Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

An agency's enforcement of regulatory requirements that call for an exercise of discretion are examined based on whether there was an abuse of discretion. *See Brennan v. Dep't of Health & Human Servs.*, 787 F.2d 1559, 1564 (Fed. Cir. 1986), *cert. denied,* 479 U.S. 985, 107 S.Ct. 573, 93 L.Ed. 2d 577 (1986). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Col. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted).

10

## II.    Commerce Lawfully Found That Jin Tiong Failed To Demonstrate Its Eligibility For A Separate Rate

In antidumping duty proceedings before Commerce, producers in non-market economies, such as China, must "'affirmatively demonstrate' entitlement to a separate, company-specific margin by showing 'an absence of central government control, both in law and in fact, with respect to exports.'"  *Sigma Corp.*, 117 F.3d at 1495.  A company that fails to demonstrate its independence from the government-wide entity in a non-market economy is not eligible for an individual rate and is subject to a "countrywide rate." *Transcom, Inc.*, 294 F.3d 1371, 1373 (Fed. Cir. 2002).

Under 44 U.S.C. § 1507, publication of a document in the Federal Register is sufficient to give notice of its contents to parties affected by it.  *See* IDM at 5; *see also Shandong Yongtai Grp. Co. v. United States*, 415 F. Supp. 3d 1303, 1309 (Ct. Int'l Trade 2019); *Suntec Indus. Co. v. United States*, 951 F.Supp. 2d 1341(Ct. Int'l Trade 2013).  Commerce has discretion both to set deadlines and to enforce those deadlines by rejecting untimely filings.  *See Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1365 (Ct. Int'l Trade 2012) (citing *NTN Bearing Corp. v. United States*, 74 F. 3d 1204, 1206-07 (Fed. Cir. 1995)); *see also Dongtai Peak Honey Indus. Co., Ltd. V. United States*, 777 F.3d 1343 ([court] 2015).

In its *Initiation Notice,* Commerce established that all exporters or producers subject to review seeking to establish independence from government control and therefore qualify for a separate rate must submit a separate rate application or certification within 30 days after the date of publication of the *Initiation Notice*. Appx000093; Appx000331.   The publication of the *Initiation Notice* provided Jin Tiong, which was listed as one of the companies under review, with notice that it would be subject to the administrative review and of the deadline to submit a separate rate application or certification.  *See* Appx000331; *see also Transcom, Inc. v. United States,* 182 F.3d 876, 882-83 (Fed. Cir. 1999) ("{A}ny reasonably informed party should be able to determine, from the published notice of initiation read in light of announced Commerce Department policy, whether particular entries in which it has an interest may be affected by the administrative review."). Nonetheless, Jin Tiong failed to submit a separate rate application by the deadline. Appx000331*see also* Appx000108.  A company that fails to establish independence from government control in a non-market economy proceeding is subject to a country-wide rate and will not receive a separate rate.  *See China Mfrs. Alliance*, 1 F.4th at 1032; *Transcom*, 294 F.3d at 1373.  Therefore, Commerce's determination that Jin Tiong was part of the China-wide entity is supported by substantial evidence and in accordance with law.

12

**III.    The Court Should Reject Plaintiff-Appellants' Argument That Commerce Exceeded Its Authority By Not Allowing Jin Tiong To Submit A Questionaire Response**

Repwire and Jin Tiong argue that Commerce exceeded its discretion by not issuing its antidumping duty questionnaire to Jin Tiong and permitting Jin Tiong to respond.  Repwire Br. at 12-14.  Plaintiff-Appellants' argument lacks merit, however, because Commerce clearly acted within its authority to establish and to enforce rules of procedure.

The Court has held that "{a}bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *Mid Continent Steel & Wire, Inc.*, 941 F.3d at 541.  In this case, Commerce stated that "{a}ll firms that wish to qualify for separate rate status . . . must complete, as appropriate either a separate rate application or certification" and provided the deadline for such submissions.  Appx000093.  Commerce's determination to enforce that deadline is within its discretion—particularly when Jin Tiong's only reason for failing to file a timely separate rate application was that it did not believe it was required to do so.  *See* Appx000115-117 (Objection to Withdrawal of Questionnaire)..

Repwire and Jin Tiong argue that because the number of companies under review is not large, Commerce could not limit the number of respondents and thus

was required to send a questionnaire to Jin Tiong, citing 19 U.S.C. § 1677f-1(c)(1).

Repwire Br. at 12-14.  But that statute does not speak to or dictate a process that

Commerce must follow to conduct its reviews.

Commerce acted within its discretion when it established a threshold process

that parties must follow to demonstrate their eligibility for a separate rate, and Jin

Tiong failed to follow that process.  Parties that fail to make a showing of

independence from government control are subject to a China-wide rate, which is not

calculated on an individualized basis.  *See China Mfrs. Alliance*, 1 F.4th at 1032.

Moreover, because the China-wide entity was not under review here, the rate for the

entity was not subject to change or recalculation.  In these circumstances, it would

have been fruitless for Commerce to collect company-specific sales and production

information from Jin Tiong when that information would not have been used to

calculate a rate in the review.  Therefore, Commerce appropriately declined to send a

questionnaire to Jin Tiong.

Repwire and Jin Tiong fail to provide a compelling reason for the Court to

curtail Commerce's discretion to set and to enforce procedural deadlines.  And there

is no support for the claim that Commerce was required to accept an unsolicited

questionnaire response from Jin Tiong in the absence of a timely separate rate

application.

14

**IV.**    **Jin Tiong Did Not Receive Disparate Treatment**

The Court should reject plaintiff-appellants' assertion that Commerce's determination was inconsistent with prior practice.  Repwire Br. at 14-15.

First, to support their argument that Jin Tiong was treated disparately, Repwire and Jin Tiong rely on language in a questionnaire that is not on the record in this case and that Commerce issued in a separate proceeding .  *Id.* (citing Cast Iron Soil Pipe Questionnaire Response, Appx000141-144).  But an unpublished document on the record of a separate proceeding does not override Commerce's clear statement in the *Initiation Notice* of *this* proceeding that all firms seeking separate rate status must comply with the stated deadline.  Nor do Repwire and Jin Tiong cite any contrary authority.  As Repwire and Jin Tiong acknowledge, Commerce's rescinded the section A questionnaire that it sent to Jin Tiong because Jin Tiong had failed to meet the deadline to submit a separate rate application or certification.  *See* Repwire Br. at 14 n.2; Appx000108 (rescinding the questionnaire inadvertently issued to Jin Tiong).  And, in any event, the *Initiation Notice* clearly articulates a single path for parties seeking to establish their separate rate eligibility–a path that Jin Tiong was required to follow but elected not to follow.

Further, Commerce's practice belies Repwire and Jin Tiong's argument. When the issue has been squarely before Commerce, it has found that parties that fail to timely submit separate rate information pursuant to the deadline established

15

in Commerce's initiation notice are not eligible for a separate rate. IDM at 4
(citing *Crystalline Photovoltaic Cells*, *Whether or Not Assembled into Modules
from the People's Republic of China*, 80 Fed. Reg. 40,998 (Dep't of Commerce
Jul. 14, 2015), and accompanying Issues and Decision Memorandum at 11-13
(*CSPV Cells*); *Hydrofluorocarbon Blends from the People's Republic of China*, 86
Fed. Reg. 49,516, 49,517 (Sep. 3, 2021) (*HFC Blends*)). In *CSPV Cells*,
Commerce denied a Chinese producer a separate rate because it failed to timely
meet the requirements set forth in the initiation notice with regard to filing its
separate rate information. *CSPV Cells* at 11-13. Likewise, in *HFC Blends*,
Commerce found that the sole company subject to review failed to timely submit a
separate rate application pursuant to the deadline set in the initiation notice and
therefore failed to establish its eligibility for separate rate status. *HFC Blends* at
49,517.

Finally, Repwire and Jin Tiong also argue that Commerce's stated practice is
contradicted by its actions in a separate proceeding in which Commerce reviewed a
company that failed to timely submit a separate rate application or certification.
Repwire Br. at 16-17 (citing *Cast Iron Soil Pipe from the People's Republic of
China*, 83 Fed. Reg 44,567 (Dep't of Commerce Aug. 31, 2018) (preliminary
determination). But even if *Cast Iron Soil Pipe* were not distinguishable, which it
is, a determination made in a single proceeding distinct from the immediate review

is insufficient to establish an agency practice that is binding on Commerce, particularly in light of the contrary *CSPV Cells* and *HFC Blends* determinations. *See United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1254 (Ct. Int'l Trade 2018) ("Commerce's actions establish a practice when a uniform and established procedure exists that would lead a party, in the absence of notification of change, reasonably to expect adherence to the agency's past action." (internal quotations omitted)); *see also Shandong Huarong Mach. Co. v. United States*, 435 F. Supp. 2d 1261 n. 23 (Ct. Int'l Trade 2006) (finding that "two prior determinations are not enough to constitute an agency practice that is binding on Commerce").

Further, as Commerce explained to the trial court, *Cast Iron Soil Pipe* is distinguishable because, in that case, Commerce erroneously listed the mandatory respondent, Heng Tong, as having timely submitted a separate rate application. *See Cast Iron Soil Pipe* at n.54. Repwire and Jin Tiong attempt to discredit this distinction by averring that Commerce is "presumed to read all submissions on the record." Repwire Br. at 19. But what Repwire and Jin Tiong essentially argue is that Commerce is infallible, which is inaccurate given that in the *Cast Iron Soil Pipe* proceeding, Commerce clearly made a factual error. *See Cast Iron Soil Pipe* at n.54 (listing Heng Tong as a separate rate applicant); *but see* Appx000120-129 (Comments on Withdrawal of Questionnaire, Exhibit A) (showing an absence of a

separate rate application filed by Heng Tong in Commerce's internal record system).

In short, Repwire and Jin Tiong fail to demonstrate that Commerce deviated from its regular practice or that the instructions in the *Initiation Notice* need not have been followed.  Jin Tiong was not treated disparately.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court affirm the judgment of the Court of International Trade.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

<u>s/ Reginald T. Blades, Jr.</u>
REGINALD T. BLADES, JR.
Assistant Director

<u>/s/ Eric J. Singley</u>
ERIC J. SINGLEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele: (202) 616-1273
eric.j.singley@usdoj.gov

October 20, 2023                    Attorneys for Appellee

## **CERTIFICATE OF COMPLIANCE**

Counsel for respondent certifies that this brief complies with the Court's type-volume limitation rules. *See* Fed. Cir. R. 32(a). According to the word-count calculated by the word processing system with which this brief was prepared, the brief contains a total of 3,902 words, which is within the 14,000 word limit.

/s/ Eric J. Singley

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 20th day of October, 2023, a copy of the foregoing "BRIEF OF DEFENDANT-APPELLEE UNITED STATES" was filed electronically and served on all parties by operation of the Court's electronic filing system.

/s/Eric J. Singley
ERIC J. SINGLEY